546 P.2d 867

**Lewis W. TROTTER and Norma Sue Trotter, Individually, and Lewis W. Trotter, as father and next friend of Sandra Lou Trotter, Wilburn T. Trotter and Eva Lee Trotter, minors; and John Mayo and Grace Mayo, Individually, and John Mayo, as father and next friend of Melanie Kay Mayo and Martha Claudine Mayo, minors, Plaintiffs-Appellants,**

**v.**

**R. D. CALLENS, d/b/a Associated Callens Flying Service, Craig Dunn, Underwriters at Lloyds, London, General Aircraft Insurance Ltd., Phoenix Assurance Co., Ltd., and La Concorde Per R. Malatier, Ltd., Defendants-Appellees.**

**No. 1831.**

Court of Appeals of New Mexico.

Feb. 3, 1976.

Certiorari Denied March 1, 1976.

George J. Hopkins, George T. Harris, Jr., Mel E. Yost, Allen C. Dewey, Jr., Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, for plaintiffs-appellants.

Charles A. Pharris, Keleher & McLeod, Albuquerque, for Callens and Dunn.

Thomas J. McBride, Johnson, Paulantis & Lanphere, Albuquerque, for Underwriters, General Aircraft Ins., Phoenix Assurance, La Concorde Per R. Malatier.

## OPINION

HERNANDEZ, Judge.

The plaintiffs sued the defendants, R. D. Callens and Craig Dunn, d/b/a Associated Flying Service (Flying Service), their insurance carriers (Insurance Carriers), and Hercules, Inc. (Hercules) manufacturer of the pesticide, for personal and property damages on theories of trespass, carrying on an ultrahazardous activity, gross negligence, and nuisance. Flying Service, in turn filed a cross-claim against Hercules, alleging its liability for plaintiffs' damages on theories of product liability, inadequate warning or labeling, negligence, and failure to test or inspect. Flying Service, among other defenses, alleged that plaintiffs' damages were the result of an "Act of God."

Immediately prior to the start of trial, the court separated the claims against the Insurance Carriers, because of issues concerning coverage. These claims would be tried at a future date should plaintiffs prevail. The court before submitting the case to the jury directed a verdict in favor of Hercules on plaintiffs' suit which is not being appealed.

The court gave the jury 44 separate instructions of which the following are pertinent to our purpose:

"INSTRUCTION NO. 7—I have ruled in this case that one engaged in the aerial spraying of Silvex, as the Defendants Callens and Dunn were, is engaged in an ultra-hazardous or inherently dangerous activity, and by reason thereof, is liable for any damages proximately caused by that activity. Therefore, if you find that the Plaintiffs or any of them were damaged as a proximate result of the spraying, then you must find the liability issue against the Defendants Callens and Dunn, and in favor of the Plaintiff or Plaintiffs so injured."

"INSTRUCTION NO. 11—The defendants contend that the incident and the claimed damages resulted from an Act of God. An Act of God is an unusual, extraordinary, sudden and unexpected manifestation of the forces of nature for which man is not responsible.

If you find that an Act of God was the sole proximate cause of the incident and claimed damages then the defendants are not liable.

If the defendants' actions concurred as a proximate cause with the claimed Act of God, defendants may be held liable. If, however, the Act of God would have caused the claimed injury regardless of defendants' actions, then defendants cannot be held liable."

"INSTRUCTION NO. 27—A negligent act or omission cannot be said to be a proximate cause of an injury if, between the time of the negligent act or omission and the time of the injury in question there occurs an 'independent intervening cause' of such injury.

An 'independent intervening cause' is an act or omission which interrrupts the natural sequence of events following from the first act or omission, turns aside its course, prevents the fulfillment of the natural and probable result of the original act or omission, and produces a different result that could not have been reasonably foreseen to have been a result of the original act or omission."

The case was submitted to the jury upon special interrogatories requiring the jury to determine if Flying Service was liable for the personal and property injuries suffered by the respective plaintiffs. The jury's verdict was that Flying Service was not liable.

The plaintiffs appeal alleging three points of error:

"POINT I: THE DISTRICT COURT ERRED IN DENYING PLAINTIFFS'

MOTION TO STRIKE DEFENDANTS' ACT OF GOD DEFENSE, AND IN SUBSEQUENTLY INSTRUCTING THE JURY ON ACT OF GOD . . . ."

■ Plaintiffs make two contentions central to this point. First they argue that the Supreme Court in abolishing the defense of unavoidable accident by implication abolished the "Act of God" defense because theoretically they are the same, i. e., a denial of causation by reason of the interposition of an independent cause. *Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973). The Supreme Court was very explicit in *Alexander:* "By nothing we have said in this opinion do we intend to dispose of any defense in negligence cases other than unavoidable accident."

■ Plaintiffs' second contention is that an Act of God defense is not available to a person engaged in an ultrahazardous activity citing Restatement of Torts § 522 (1938) as authority:

"One carrying on an ultrahazardous activity is liable for harm under the rule stated in section 519, although the harm is caused by the unexpectable: (a) innocent, negligent or reckless conduct of a third person, or (b) action of an animal, or (c) operation of a force of nature."

Plaintiffs further argue that the court determined that Flying Service was engaged in an ultrahazardous activity and therefore erred in giving instruction No. 11. We do not agree. We see no sound reason in logic or policy for not allowing this defense to such an activity considering the definition of "Act of God". The definition of "Act of God" in the previously quoted instruction is not challenged. See U.J.I. Civil 13.11. Paraphrasing the instruction, an Act of God applies only to such an extraordinary and unexpected manifestation of the forces of nature as cannot be prevented by human care, skill or foresight; that is, such a cause as would have produced the injury independent of the defendants' actions. However, if the resulting injury is in part produced by the wrongful or negligent act of the defendant he will be held liable. *Shephard v. Graham Bell Aviation Service,* 56 N.M. 293, 243 P.2d 603 (1952). Prosser, Law of Torts, 4th Ed., Ch. 13, pp. 520–521:

"In the field of negligence, the defendant frequently is held liable when the risk he has created is realized through unforeseeable intervening causes. But where strict liability is in question, the strong current of authority, notwithstanding the Restatement of Torts to the contrary, relieves the defendant of liability in such a case. Thus in the leading case of *Rylands v. Fletcher,* where the defendant's reservoir broke through into the plaintiff's mine, it was suggested that the defendant might excuse himself by showing that the event was caused by an Act of God—meaning, obviously, an unforeseeable intervening force of nature."

No question is raised concerning the sufficiency of the evidence to support the Act of God instruction given by the trial court.

"POINT II: THE DISTRICT COURT ERRED IN DISMISSING THE [INSURANCE CARRIERS] FROM THE LAWSUIT . . ., AND BY THE COMMENTS THE COURT MADE TO THE JURY REGARDING THIS ACTION . . . ."

The Insurance Carriers were not dismissed from the lawsuit. The issue of coverage was merely separated for future trial if the plaintiff should prevail.

Rule 42(b) of the New Mexico Rules of Civil Procedure, § 21–1–1(42), N.M.S.A. 1953 (Repl. Vol. 4) provides:

"Separate trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving the right of trial by

jury given to any party as a constitutional right."

■ The language that plaintiffs complain about centered on the preliminary remarks made by the court to the jury to explain the delay in the beginning of the trial:

"Ladies and gentlemen of the jury, you are entitled to know the development that has taken some time to argue. One of the reasons that we didn't get started here this morning, at nine o'clock, we've been in conference hearing arguments of counsel for about one hour. . . . A couple of matters—one of the matters involves the fact that some of the defendants in this case, as you learned early in the trial proceedings, some of the defendants are insurance companies, and the Court early in the proceedings permitted this information to be conveyed to the jury, because of the special circumstances of this case. And the question came up as to whether the defendants should remain in the case —defendant insurance companies should remain in the case at this time, because of an issue that came up as to coverage. There has been a question as to coverage, as to whether the insurance companies are liable under the policies of this case. The Court has ruled at this point that this matter of coverage is going to be determined at a later date. And the Court has, therefore, excluded the defendant insurance companies from this case . . . ."

Plaintiffs argue that these comments were erroneous and confusing and that they were prejudiced thereby. We fail to perceive, and plaintiffs do not tell us, what part of this statement is erroneous. We likewise cannot discern where the confusion lies. At oral argument plaintiffs asserted that they were prejudiced by the fact that the insurance carriers (and the question of coverage) was severed from the trial that decided the liability of Flying Service. The rule authorizes separate trials in the discretion of the court. *Men-*

*denhall v. Vandeventer,* 61 N.M. 277, 299 P.2d 457 (1956). There was no abuse of discretion in this case. Accordingly, plaintiffs were not prejudiced.

"POINT III: THE DISTRICT COURT ERRED BY DENYING THE PARTIES PLAINTIFF THE NUMBER OF PEREMPTORY CHALLENGES TO WHICH THEY WERE ENTITLED BY STATUTE AND COURT RULE . . . ."

■ Rule 38(e) of the New Mexico Rules of Civil Procedure, § 21–1–1(38), N.M.S.A.1953 (Repl.Vol. 4, Supp.1975) provides in part:

"In cases tried to a jury of twelve [12] each party may challenge five [5] jurors peremptorily. When there are two [2] or more parties defendant, or parties plaintiff, they will exercise their peremptory challenges jointly and if all cannot agree on a challenge desired by one [1] party on a side, that challenge shall not be permitted. *However, if the relief sought by or against the parties on the same side of a civil case differs, or if their interests are diverse, or if cross-claims are to be tried, the court shall allow each such party on that side of the suit* . . . *five* [5] *peremptory challenges* . . . ." [Emphasis Ours.]

See also § 19–1–14, N.M.S.A.1953 (Repl. Vol. 4). There were multiple party plaintiffs. See *Romero v. Felter,* 83 N.M. 736, 497 P.2d 738 (1972). The trial court allowed five peremptory challenges to these plaintiffs. The issue is whether they were entitled to more than five. That issue is determined by whether the plaintiffs sought different relief or whether their interests were diverse. The plaintiffs employed the same attorneys. There is nothing showing their interests were antagonistic. The trial was on the issue of whether Flying Service caused damage to the various plaintiffs. The amount of damages was not tried; that issue would be tried at a later date if Flying Service was liable. The relief sought—that Flying Service caused damage—did not differ. Nothing

indicates plaintiffs' interests were diverse. The trial court did not err in limiting the plaintiffs to five peremptory challenges.

We affirm.

IT IS SO ORDERED.

WOOD, C. J., and SUTIN, J., concur.