684 P.2d 1151

**James W. SEWELL, M.D., Plaintiff-Appellant,**

v.

**John N. WILSON, M.D., B.S. Bhati, M.D., Edward J. Gerety, M.D., individually, and Surgical Associates, a professional association, Defendants-Appellees.**

No. 7110.

Court of Appeals of New Mexico.

March 1, 1984.

Certiorari Quashed June 14, 1984.

Ronald J. Van Amberg, Roth, Van Amberg, Gross, Amarant & Rogers, Santa Fe, for plaintiff-appellant.

Alan Konrad, Miller, Stratvert, Torgerson & Brandt, P.A., Albuquerque, for defendant-appellee Gerety.

Richard C. Minzner, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendants-appellees Wilson and Bhati.

## OPINION

HENDLEY, Judge.

Plaintiff appeals an adverse jury verdict in a medical malpractice action which alleged negligence by defendant doctors in administering certain drugs to plaintiff during postoperative care. We discuss whether the trial court erred in 1) admitting a medical opinion letter into evidence, and 2) granting extra peremptory challenges. We reverse as to 1) and discuss 2) because of the remand for a new trial.

The defendants important to this appeal are the three doctors who were involved in plaintiff's cardiac surgery and postoperative care. Surgical Associates, with which the three doctors are associated, by prior stipulation of the parties received a verdict consistent with that rendered the doctors. Plaintiff claims that his loss of hearing and vestibular function (balance) were caused by defendants' prescription or administration of drugs, including Gentamicin, after the cardiac surgery.

### Opinion Letter

The opinion letter, Defendants' Exhibit F, was to plaintiff from a Dr. John B. Roberts and stated in part: "I suspect that the dizziness relates to the operated left ear and not to the drugs that you received." Dr. Roberts was never a witness at trial. Plaintiff's objection that the letter was hearsay was overruled.

Plaintiff contends that admission of Exhibit F was error because it is inadmissible hearsay. He argues that because the opinion expressed in the letter went to the heart of plaintiff's case and because he did not have an opportunity to cross-examine its author, the error was prejudicial. Three questions must be addressed to decide this issue. 1) Was the letter hearsay? 2) Was the letter admissible? 3) Was admission of the letter harmless error?

### 1) Was the letter hearsay?

■ The letter was introduced and admitted into evidence during the testimony of Dr. Kilgore, the defendants' medical expert. Defense counsel moved for the admission of Exhibit F as follows:

Your Honor, I previously had referred to a number of Defendants' Exhibits *which Dr. Kilgore had identified as records and reports that he reviewed in reaching his opinion* in this case. And I would like to offer Defendant's Exhibit F which is a letter from Dr. Roberts to Dr. Sewell [plaintiff] in March of 1977; Defendant's Exhibit L which is Dr. Shay's operative report in 1972; Defendant's Exhibit M which is Dr. Shay's report, his examination report in 1972; and Defendant's Exhibit O which is a letter from Dr. Bicknell dated October 9, 1975. (Emphasis added.)

Plaintiff's objection, defendants' response, and the court's ruling, were as follows:

[PLAINTIFF] Yes, Your Honor, I think it's proper for him to testify about what he has relied upon, but I don't think it's proper for you to admit those documents into evidence; it's hearsay.

[DEFENDANT] That's the basis of what he did rely on and it's proper to offer them for that basis.

I think the jury should be entitled to see what the documents are.

THE COURT: Wait just a minute, gentlemen, please. To permit the jury to understand what are the facts or data upon which Dr. Kilgore based his opinion, the Defendant's Exhibits for identification marked F, L, M and O, will be

admitted. This is in accordance with Rule 703 of the rules of evidence.

Defense counsel offered the letters to show the "basis of what [Dr. Kilgore] did rely on" in forming his opinion. Although defense counsel sought to avoid a hearsay problem by not offering Exhibit F for the truth of the matter asserted, Dr. Kilgore's testimony contradicts counsel's characterization of the purpose of admitting that letter. Dr. Kilgore's direct examination on Exhibit F follows:

Q. Doctor, I want to ask you if in reviewing this case you also considered a letter from Dr. Roberts, which I have marked as Defendant's Exhibit F.

A. I've seen the letter, yes.

\*     \*     \*     \*     \*     \*

Q. Did you rely to any extent on the letter—the language contained in Dr. Roberts' letter, which I also showed to you?

A. Again, *I had my opinion already before I read this.* My interpretation of Dr. Roberts' letter is that his opinion is essentially the same as Dr. Bicknell's. (Emphasis added.)

Dr. Kilgore's testimony is not that he relied on Dr. Roberts' letter, but that he had already formed his opinion before he read the letter. Therefore, the letter should not have been admitted to show the basis of Dr. Kilgore's opinion.

**2) Was the letter admissible?**

The trial court ruled that Exhibit F was admissible under NMSA 1978, Evid.R. 703 (Repl.Pamp.1983). Rule 703 provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Admission into evidence of reports of non-testifying physicians was considered in *Wilson v. Leonard Tire Co., Inc.,* 90 N.M. 74, 559 P.2d 1201 (Ct.App.1976). We held that Rule 703 did not apply because there was no evidence that the challenged reports were relied on by the testifying physicians. We also held: "Even if the physicians had relied on hearsay in forming their opinions, that would not make the hearsay itself admissible [under Rule 703]."

In *O'Kelly v. State,* 94 N.M. 74, 607 P.2d 612 (1980), our interpretation of Rule 703 was seemingly approved. *O'Kelly* was a criminal appeal in which defendant successfully challenged his shoplifting conviction on the ground that admission into evidence of the hearsay opinion of a non-testifying psychiatrist on the defendant's ability to form specific intent was error. Although the State argued that Rule 703 allowed admission of the hearsay opinion, the court disagreed based on *Wilson:* "Rule 703 is not applicable. It has no bearing upon the admission in evidence of the opinion of a non-testifying expert." *O'Kelly.*

Defendant Dr. Gerety argues that the letter is admissible under Rule 703 on the basis of *Matter of Dean,* 94 N.M. 45, 607 P.2d 132 (Ct.App.1980). In that case, the court affirmed the district court's order of involuntary commitment of defendant. Defendant alleged error in her commitment because the court had considered opinions of two absent doctors. The opinion states that defendant raised the issue as a matter of constitutional law; however, the appellate court decided the issue on the basis of the rules of evidence, Rules 703 and 705. NMSA 1978, Evid.R. 705 (Repl.Pamp.1983) provides that an expert may testify on the underlying facts or data which form the basis of his opinion if so required by the court or by cross-examination. The trial judge in *Dean,* in announcing the decision to commit defendant, stated that he relied on the opinions of the absent doctors " 'as taken into consideration by [the testifying medical witness].' " (Emphasis omitted.)

*Dean.* Since the reports were considered, not for the truth of the matter asserted, but as the basis of another opinion, the reports were not hearsay and thus not comparable to Defendants' Exhibit F in dispute here. For this reason, *Dean* is not controlling, and does not call for admission of the letter under Rule 703.

Defendant Dr. Gerety also argues that the letter in whole or part was admissible as a statement for purposes of medical diagnosis or treatment under NMSA 1978, Evid.R. 803(4) (Repl.Pamp.1983), and *State v. Ruiz,* 94 N.M. 771, 617 P.2d 160 (Ct.App.1980). This argument assumes the letter was hearsay, although at trial defendant characterized it as not being hearsay. Unlike the emergency room records excluded by the trial court in *Ruiz,* there is no showing that a witness other than the person who prepared the letter (Dr. Roberts) could have laid the proper foundation to admit the letter. The same problem exists with defendants' argument for admission of the letter pursuant to Rule 803(6), records of regularly conducted activity. *Ruiz* is not on point. The letter was not admissible under either Rule 803(4) or 803(6) for lack of the foundation required by those rules. Accordingly, we do not consider whether the letter would have been admissible if the proper foundation had been laid. Dr. Gerety points out that, in the trial court, Dr. Sewell did not object to the admissibility of the letter for lack of a proper foundation. We agree. However, the letter was offered in the trial court under either evidence rule. The question of the admissibility of the letter under these rules has been raised for the first time in the appeal and has been presented on the basis that the letter was admissible, under either of the two rules, as a matter of law. That is incorrect.

Defendants, Drs. Wilson and Bhati, argue for admission of the letter under Rule 705. Rule 705 provides:

The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the judge requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

There are three problems with application of this rule. 1) The letter contains Dr. Roberts' opinion which does not fall within "facts or data." *See O'Kelly.* 2) This letter was admitted during direct examination, not cross-examination. 3) Dr. Kilgore's testimony was that he had formed his opinion *before* he read the letter. Rule 705 is not applicable.

Defendants' final argument is that because Dr. Kilgore testified about Dr. Roberts' letter and its conclusion without objection, plaintiff waived his right to object to admission of the letter as an exhibit. Dr. Kilgore's testimony about the content of Dr. Roberts' letter was only that it seemed to express the same opinion as that expressed in Dr. Bicknell's letter. Although Dr. Kilgore read Dr. Bicknell's conclusion during his testimony, he never read from Dr. Roberts' letter. For this reason, that the text of Dr. Roberts' letter was not revealed to the jury, plaintiff did not waive his hearsay objection by failing to object to the first mention of Dr. Roberts' letter.

### 3) Was admission of the letter harmless error?

Defendants argue that even if admission of the letter was error, it was harmless error because the evidence was cumulative. A comparison of defendants' experts' expertise and conclusions follows.

*Dr. Kilgore*

Specialist in otolaryngology (ear, nose and throat); 90% of his practice is ear surgery.

*Conclusions:* Plaintiff's physical complaints were caused by these factors: history of middle ear disease and surgery; history of otosclerosis ("otosclerosis" is a disease where bone formation

causes hearing loss); history of repeated surgeries to middle ear; trauma of the January 1975 cardiac surgery.

### Dr. Cronin

Specialist in internal medicine (nonsurgical) with subspecialty in nephrology (disease of the kidney).

*Conclusions:* Defendant doctors properly prescribed, administered, and monitored the three drugs plaintiff complains of. Nothing was wrong with plaintiff's kidney during his hospital stay in January 1975.

### Dr. Hodgin

Specialist in internal medicine with subspecialty in infectious diseases.

*Conclusions:* It was appropriate to use Gentamicin, Lasix, and Keflin for postoperative treatment of plaintiff. Defendant doctors did not violate the applicable standard of care.

### Dr. Bicknell

Professor of neurology (diseases of the nervous system) and practicing physician in field of neurology.

*Conclusions:* The causes of the conditions of which plaintiff complains are his history of otosclerosis and multiple ear procedures.

Dr. Bicknell's letter of October 9, 1975, to defense counsel, concludes that Dr. Sewell's problems of dizziness and ear dysfunction are related to his middle ear disease, not to the drugs administered after the cardiac surgery. (Defendants' Exhibit O)

### Dr. Roberts' Letter

The letterhead indicates that Dr. Roberts is an ear, nose and throat specialist. Dr. Kilgore testified that Dr. Roberts is an otolaryngologist.

*Conclusions:* Plaintiff's dizziness "relates to the operated left ear and not to the drugs ... received." (Defendants' Exhibit F)

■ For the following reasons we hold that Dr. Roberts' letter is not cumulative evidence. 1) Drs. Cronin and Hodgin did not offer medical opinions of the causes of plaintiff's dizziness and ear dysfunction. 2) Dr. Bicknell is a neurologist, not an otolaryngologist. Dr. Bicknell's conclusion in Exhibit O and at trial is suspect because he seems to have changed his opinion about the possible ototoxic effect of the drugs after he learned that a lawsuit was filed. *See also Sewell v. Wilson,* 97 N.M. 523, 641 P.2d 1070 (Ct.App.1982). Thus, Dr. Roberts' letter added significant support to the theory that plaintiff's complaints were related to his past medical history, and not the administration of drugs. *See Wilson.* Admission of the letter was reversible error.

■ Defendant Dr. Gerety argues that this Court should affirm the trial court regardless of any alleged error against plaintiff because of the trial court's error in failing to render a directed verdict for defendant doctors at conclusion of plaintiff's case. Dr. Gerety makes this appeal on the basis of NMSA 1978, Civ.App.R. 3(b) (Cum.Supp.1983), which allows an appellee to obtain review of errors without a cross-appeal for the purpose of enabling the appellate court to affirm. "[I]t is error for the court to direct a verdict in favor of a defendant at the close of plaintiff's case unless plaintiff has presented no facts which would support a judgment in his favor." *Jones v. New Mexico School of Mines,* 75 N.M. 326, 404 P.2d 289 (1965). Defendant Dr. Gerety did not supply this Court with a complete transcript of plaintiff's case. It is impossible to determine if failure to grant a directed verdict was error without reviewing all the evidence presented by plaintiff. It is Dr. Gerety who seeks the review. It was his obligation to furnish the transcript. It is not plaintiff's obligation as suggested at oral argument. *State v. Duran,* 91 N.M. 756, 581 P.2d 19 (1978).

### Peremptory Challenges

■ Over plaintiff's objection, defendant Dr. Gerety was granted five separate per-

emptory challenges in addition to the five joint challenges for Drs. Wilson and Bhati because of his antagonism of interest with them. Plaintiff argued to the trial court that there was no "diversity of interest" among the three doctors. Although the three doctors were originally represented by a single counsel, at the time of trial Dr. Gerety was represented by separate counsel and had filed a separate answer which raised independent intervening cause and the tortious conduct of others as affirmative defenses. Plaintiff claims that the trial court erred by giving defendant Dr. Gerety five separate peremptory challenges. Because we reverse, we discuss this issue, which we assume will arise on retrial.

Peremptory challenges are governed by NMSA 1978, Civ.P.R. 38(e) (Cum.Supp. 1983), which reads in part:

(e) **Challenges in civil cases.** ... When there are two or more parties defendant, or parties plaintiff, they will exercise their peremptory challenges jointly .... However, if the relief sought by or against the parties on the same side of a civil case differs, or if their interests are diverse, or if cross-claims are to be tried, the court shall allow each such party on that side of the suit ... five peremptory challenges if the case is to be tried to a jury of twelve.

Plaintiff relies on *Strickland v. Roosevelt County, Etc.*, 94 N.M. 459, 612 P.2d 689 (Ct.App.1980); and *Trotter v. Callens*, 89 N.M. 19, 546 P.2d 867 (Ct.App.1976). In *Trotter*, plaintiffs, a number of individuals, sued defendants (flying service, insurance company, and manufacturer) for damages arising out of aerial spraying of pesticide. The jury found that the flying service was not liable, and plaintiffs appealed. On appeal, plaintiffs argued that the trial court erred in allowing plaintiffs to exercise only five peremptory challenges. We affirmed, stating:

The issue is whether they were entitled to more than five. That issue is determined by whether the plaintiffs sought different relief or whether their interests were diverse. The plaintiffs employed the same attorneys. There is nothing showing their interests were antagonistic.... The amount of damages was not tried; that issue would be tried at a later date .... The relief sought—that Flying Service caused damage—did not differ. Nothing indicates plaintiffs' interests were diverse.

Plaintiff's case is distinguishable based on the factors identified by the *Trotter* court. At the time of trial, defendants were represented by different counsel and had been since July 12, 1982, which was a few weeks after certiorari was denied in *Bartlett v. New Mexico Welding Supply, Inc.*, 98 N.M. 152, 646 P.2d 579 (Ct.App.1982), which abolished joint and several liability. At the time of trial, defendant Dr. Gerety had filed a separate answer which raised independent intervening cause and negligence of others as affirmative defenses.

*Strickland*, the other case plaintiff relies on, reversed the trial court and granted a new trial. Two judges agreed in that result, one judge dissented. Thus, the result went only to reversal and not the discussion. *See* NMSA 1978, § 34-5-11 (Repl. Pamp.1981); *Casias v. Zia Co.*, 94 N.M. 723, 616 P.2d 436 (Ct.App.1980). The discussion in *Strickland* serves no precedential value and is not considered.

Defendants' argument is that comparative negligence, plus the abolition of joint and several liability, means that multiple defendants will automatically seek to establish the others' liability. *Distad v. Cubin*, 633 P.2d 167 (Wyo.1981), is relied on by defendant Dr. Gerety. *Distad* was an appeal from a verdict against plaintiff in a wrongful death action; the Supreme Court of Wyoming affirmed. An issue on appeal was whether the trial court erred in allowing each defendant separate peremptory challenges. The defendants were a doctor and a hospital. The Wyoming rule differed from the New Mexico rule; it provided that "each side is allowed three (3) peremptory

challenges." *Distad,* 633 P.2d at 170, quoting from § 1–11–202, W.S.1977. Therefore, the question on appeal was what was meant by "side." The court concluded that a determination of whether multiple defendants constituted separate sides involved looking at the claim against them and "whether the defendants' interests are or may be antagonistic."

Antagonistic interests must also be considered under New Mexico's Rule 38(e). *Trotter.* The *Distad* court focused on the different acts of negligence attributed to the defendants. In this case, plaintiff accuses only Drs. Wilson and Bhati of negligence in prescribing drugs. When different independent acts of negligence are alleged in a suit governed by comparative negligence, "very seldom will multiple defendants not have antagonistic interests. There is ... a triangle of parties as actors." *Distad.*

Accordingly, we hold that the trial court properly granted defendant Dr. Gerety five separate peremptory challenges because his interests were antagonistic to those of the other defendants based on the pleadings and the effect of the comparative negligence doctrine.

Reversed and remanded for a new trial. Plaintiff is awarded appellate costs.

**IT IS SO ORDERED.**

WOOD and ALARID, JJ., concur.