**Certiorari Denied, February 16, 2012, No. 33,401**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-029**

**Filing Date: November 23, 2011**

**Docket No. 28,517**

**STATE OF NEW MEXICO,**

       **Plaintiff-Appellee,**

**v.**

**LEROY JARAMILLO,**

       **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen Quinn, District Judge**

Gary K. King, Attorney General
Francine A. Chavez, Assistant Attorney General
Santa Fe, NM

for Appellee

Liane E. Kerr
Albuquerque, NM

for Appellant

**OPINION**

**KENNEDY, Judge.**

**{1}**      When a deputy medical examiner left the county medical examiner's office to go into private practice and subsequently required a hefty fee from the State for his trial testimony, the State put his former supervisor on the witness stand to testify to the autopsy that the first pathologist had conducted. In the course of the supervisor's testimony during direct examination, he read to the jury some contents of the autopsy report prepared by the absent doctor. The entire report was thereafter admitted as evidence and presented to the jury. To

1

the extent the district court admitted the report as an exhibit, the admission was constitutional error as it violated Defendant's confrontation rights. Thus, we reverse Defendant's conviction.

## I.    BACKGROUND

**{2}**    In October 2004, ten-month-old Cristyan Ibarra was taken to the emergency room in Clovis, New Mexico by his mother and Defendant. Owing to his symptoms, which included internal cranial bleeding, Cristyan was transported by air to Lubbock, Texas. There, he was pronounced dead several days later. Dr. Sridhar Natarajan, who at that time was employed by the Lubbock County Medical Examiner's Office, performed Cristyan's autopsy. Dr. Natarajan determined the cause of death to be closed head injuries and ruled the manner of death to be a homicide. The findings in the autopsy report were reviewed, confirmed, and signed off in a separate opinion document by four other medical examiners in the Lubbock County Medical Examiner's Office. Dr. Thomas Parsons, who later testified about the cause of Cristyan's death, was not one of these signatories.

**{3}**    Dr. Natarajan eventually left the Lubbock County Medical Examiner's Office. When he was contacted by the State to testify at the trial in this case, he stated that he required a fee of $60,000 for his testimonial services. The State concluded that this sum of money was beyond its reach and made no further efforts to obtain his services. At trial, the State called Dr. Parsons, the Deputy Chief Medical Examiner for Lubbock County, to establish the cause and manner of Cristyan's death.

**{4}**    Prior to Dr. Parsons being examined, the defense objected to any admission of the autopsy report into evidence based on the Confrontation Clause of the Sixth Amendment to the United States Constitution. The objection specifically asserted that the report was testimonial in nature and that Dr. Natarajan had not been shown to be unavailable as a witness. It is undisputed that the defense did not have an opportunity to cross-examine Dr. Natarajan. Defendant insisted that for the report and its contents to be admissible, its author, Dr. Natarajan, would be required to appear to testify about its contents. Defendant's specific objection was that any use of or reference to the report by Dr. Parsons would be improper because it "would [admit] otherwise . . . unpresentable [evidence by] just filtering it through an expert witness."

**{5}**    Nonetheless, the district court admitted the report and permitted Dr. Parsons to testify to its contents. Dr. Parsons confirmed that he was testifying for Dr. Natarajan. At the district attorney's request, Dr. Parsons read directly from the autopsy report when testifying about Cristyan's age and the circumstances leading up to his death. Dr. Parsons also testified to Dr. Natarajan's specific observations and notations made during the autopsy. In addition, a section of the admitted autopsy report, signed by five non-testifying pathologists, stated: "It is our opinion that Cristyan . . . died as a result of [c]losed [h]ead [i]njuries. . . . The manner of death is classified as a [h]omicide." The report identified one other person as having assisted in the autopsy and that person did not testify at trial. Subsequently, Defendant was convicted of child abuse resulting in death. He now appeals on the ground that his right to confrontation was violated.

## II.    DISCUSSION

**{6}** Defendant argues that the district court erroneously admitted the autopsy report and improperly allowed Dr. Parsons to testify to the substantive findings that Dr. Natarajan recorded in the report. Because admission of the autopsy report alone constituted prejudicial error mandating reversal, we need not address Defendant's argument regarding Dr. Parsons' testimony.

**{7}** The district court explicitly admitted the report as information of the type upon which medical examiners would typically rely in rendering their opinions. At trial, Defendant objected to the report's admission on the ground that Defendant had no opportunity to confront Dr. Natarajan. The State responded that, "if [Dr. Parsons] believes the information in the report is accurate, that should be able to be entered into evidence. And[,] of course, every expert's going to be looking at reports and things of that nature to render opinions." In making its ruling, the district court referred directly to its belief that *Crawford v. Washington*, 541 U.S. 36, 51 (2004), did not address the "expert witness section of the New Mexico [R]ules of [E]vidence [with regard to] an expert testifying from a prior report using [that] as a basis for his opinion." We therefore review the district court's admission of the report as pursuant to Rule 11-703 NMRA and consider whether the admission of the report was a violation of Defendant's rights under the Confrontation Clause.

### A.    Confrontation Clause Requirements

**{8}** "The Confrontation Clause guarantees the accused in a criminal trial the right to be confronted with the witnesses against him, regardless of how trustworthy the out-of-court statement may appear to be." *State v. Mendez*, 2010-NMSC-044, ¶ 28, 148 N.M. 761, 242 P.3d 328 (internal quotation marks and citation omitted). "As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness." *Bullcoming v. State*, 131 S. Ct. 2705, 2713 (2011). Thus, we now analyze whether (1) the statements in the autopsy report were testimonial, (2) Defendant had a prior opportunity to cross-examine the declarant, and (3) the declarant was unavailable. We first address whether the statements were testimonial because "only testimonial statements cause the declarant to be a witness within the meaning of the Confrontation Clause." *State v. Aragon*, 2010-NMSC-008, ¶ 6, 147 N.M. 474, 225 P.3d 1280 (internal quotation marks and citation omitted). "Questions of admissibility under the Confrontation Clause are questions of law, which we review de novo." *Id.*

### 1.    The Autopsy Report in This Criminal Case was Testimonial

**{9}** The United States Supreme Court held in *Bullcoming* that "[a] document created solely for an evidentiary purpose, . . . made in aid of a police investigation, ranks as testimonial." 131 S. Ct. at 2713 (internal quotation marks and citation omitted); *Melendez-Diaz v. Mass.*, 129 S. Ct. 2527, 2531 (2009) (holding that a statement is testimonial if the declarant would reasonably expect the statements to be used prosecutorially). In *Aragon*, the New Mexico Supreme Court, adopting *Melendez-Diaz*,

3

analyzed, in the context of reports of chemical analysis, what sort of forensic report might constitute a testimonial statement. *Aragon*, 2010-NMSC-008, ¶ 2. One factor the *Aragon* Court examined was the extent to which the person preparing the report exercised independent judgment and analysis. *Id.* ¶ 30. In this case, Dr. Natarajan's report containing his findings and conclusions resulting from Cristyan's autopsy included an exercise of judgment and analysis on his part, as he formed opinions based on his medical training and as he interpreted factual findings.

{10} Furthermore, the *Aragon* Court stated that a testimonial statement "is a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* ¶ 6 (internal quotation marks and citation omitted). In particular, *Aragon* considered whether the witness's "statements go to an issue of guilt or innocence." *Id.* ¶ 8. In this case, the autopsy report was made with the intention of the medical examiner to establish the cause and manner of Cristyan's death. The medical examiner's finding of homicide was critical to substantiate allegations that Defendant abused Cristyan and caused his death. Therefore, the autopsy report was prepared with the purpose of preserving evidence for criminal litigation. In this case, the face of the autopsy report itself states that an autopsy was requested because of "the circumstances" of Cristyan's death, being a severe brain injury of a sort commonly associated with trauma. By the time the medical examiner had determined the cause of death to be closed head injuries and the manner of death to be homicide, there was no doubt this would be used against someone in a criminal prosecution. NMSA 1978, Section 24-11-7 (1973) requires an autopsy with complete findings when a "medical investigator suspects a death was caused by a criminal act or omission or the cause of death is obscure[.]"

{11} Furthermore, Dr. Parsons testified that the report was prepared for use in litigation. There is no reason to suspect that a pathologist with considerable experience and knowledge of statutory duties to report suspicious deaths to law enforcement officers would not anticipate criminal litigation to result from his determination that the trauma-related death of a child was the result of homicide. The statements in the report were made to establish the facts related to Cristyan's cause of death; ruling the death a homicide reflects directly on the issue of a defendant's guilt or innocence. No question existed that the report would support and be used in a criminal prosecution.

{12} The State advanced a number of contentions in its briefing to support the autopsy report being considered to be outside of what is considered a testimonial statement, all of which are unavailing or predominantly based on law preceding *Melendez-Diaz*. In its supplemental brief, the State argues that *Melendez-Diaz* and *Aragon* do not address the issues in this case. First, the State argues that "[u]nlike [the] blood alcohol reports or chemical forensic reports, Texas medical examiners do not solely prepare autopsy reports for use in future prosecutions [because the] reports are prepared pursuant to [a] duty imposed by law to investigate many deaths which are not the subject of criminal prosecution." *See* Tex. Code Crim. Proc. Ann. art. 49.25, § 6 (West 2003) (listing the instances where the medical examiner has a duty to investigate a death). The State insists that the autopsy was not performed at the request of law enforcement and was non-adversarial, relying on *Garcia*

4

*v. State*, and was thus non-testimonial. 868 S.W.2d 337, 341-42 (Tex. Crim. App. 1993) (en banc). The State's use of Texas law is unavailing both in Texas and here in New Mexico.

**{13}** Texas courts have specifically rejected the State's argument that a medical examiner's statutory duty to conduct an inquest whenever there is an unexplained death renders the report non-testimonial. *See Wood v. State*, 299 S.W.3d 200, 210 (Tex. Crim. App. 2009) (holding that an autopsy report was testimonial when it was reasonable to assume that the pathologist "understood that the report containing her findings and opinions would be used prosecutorially"). More importantly, in New Mexico, any sudden, violent, or untimely death, the cause of which is unknown, must be reported to law enforcement. NMSA 1978, § 24-11-5 (1975). Medical examiners are obligated by statute to report their findings directly to the district attorney in all cases they have investigated. NMSA 1978, § 24-11-8 (1973). This forensic role is entirely in keeping with the medical examiner's purpose to "serve the criminal justice system as medical detectives by identifying and documenting pathologic findings in suspicious or violent deaths and testifying in courts as expert medical witnesses." *Strengthening Forensic Science in the United States: A Path Forward* 244 (Nat'l Research Council of the Nat'l Acads. 2009).

**{14}** Because Dr. Natarajan's report was prepared to document a homicide and intended for use in prosecution of a criminal case, we conclude that the purpose of the autopsy report was to provide prosecutorial evidence. Thus, we hold that the statements contained in the report were testimonial.

## 2.      Defendant had No Opportunity to Cross-Examine Prior to Trial

**{15}** "A criminal defendant is guaranteed the right to an effective cross-examination." *Aragon*, 2010-NMSC-008, ¶ 25 (internal quotation marks and citation omitted). It is undisputed in this case that Defendant had no previous opportunity to cross-examine either the four other pathologists signing the summary statement in the report or Dr. Natarajan, who, himself, only testified at the grand jury hearing that resulted in Defendant's indictment. Dr. Natarajan's exercise of judgment in creating the report should be subject to cross-examination as to its basis in his training in, and the application of, forensic pathology. *See Bullcoming*, 131 S. Ct. at 2714 (stating that "representations, relating to past events and human actions[,] . . . are meet for cross-examination"). Cross-examination is the "crucible" in which the opinions of an expert, the basis for those opinions, and the methods producing them are tested. *Aragon*, 2010-NMSC-008, ¶ 32. Foreclosing on the opportunity to cross-examine could create an injury of constitutional magnitude. Even in scientific matters that are performed and documented frequently and routinely, cross-examination is necessary to explore the boundaries of the expert's qualifications and correct application of scientific techniques and methods. In matters where experts base their opinions on circumstance-dependent factors, this need is acute. *See* Randy Hanzlick, John C. Hunsaker III, & Gregory J. Davis, *A Guide for Manner of Death Classification* 4 (Nat'l Assoc. of Med. Exam'rs, 1st ed. 2002) ("All [medical examiners] agree, however, on the fundamental premise that manner of death is circumstance-dependent, not autopsy-dependent.").

**{16}** Defendant's inability to cross-examine the declarant's testimonial statements is dispositive in this case. Where the government seeks to admit a testimonial out-of-court statement, it must establish that the defendant had a prior opportunity to cross-examine the declarant. *State v. Rivera*, 2008-NMSC-056, ¶ 18, 144 N.M. 836, 192 P.3d 1213. As Defendant had no prior opportunity to cross-examine the declarant, we need not concern ourselves with his availability as a trial witness. In the absence of the cross-examination requirement in satisfaction of the Confrontation Clause, we hold that admission of the autopsy report resulted in the violation of Defendant's right to confrontation.

**B.      The District Court Improperly Admitted the Autopsy Report Under Rule 11-703**

**{17}** "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *See State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. When the district court exercises its discretion based on a misapprehension of the law, it abuses its discretion. *State v. Elinski*, 1997-NMCA-117, ¶ 8, 124 N.M. 261, 948 P.2d 1209. Here, the district court's misapprehension of the law regarding the admissibility of facts and data underlying Dr. Parsons' testimony is inextricable from the confrontation violation.

**{18}** Although we have held that the admission of the autopsy report violated Defendant's confrontation rights, we briefly address the State's argument that the district court properly admitted the report under Rule 11-703, which provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

**{19}** Our Supreme Court's opinion in *Aragon* disposes of this argument. First, the Court in *Aragon* stated that "[o]nce it has been established that the Confrontation Clause does not bar admission of the statement, the rules of evidence govern whether the statement is admissible." 2010-NMSC-008, ¶ 6. Thus, if the Confrontation Clause bars use of the statement, the rules of evidence cannot make it admissible and that ends the inquiry.

**{20}** Second, *Aragon* stated that an expert could testify about his or her own opinion based on the facts and data contained in a non-testifying expert's report, but only if the testifying expert "unequivocally testified that it was his opinion," not the opinion of the non-testifying witness, and if the testifying expert testified that the facts and data are the types relied upon by experts in the field. 2010-NMSC-008, ¶ 33. Consistent with this analysis, had Dr. Parsons made it clear that he was stating his own independent opinions and that he relied on

6

the facts contained in Dr. Natarajan's report because it contained the types of facts and data upon which medical examiners rely, then Dr. Parsons' testimony may have been admissible. However, Dr. Parsons did not testify to this effect and, thus, the narrow exception noted in *Aragon* is not applicable. Furthermore, even under such a narrow exception, the report itself and the facts contained in it would not be admissible absent further action by the court. *See* Rule 11-703 ("Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."); *see also Aragon*, 2010-NMSC-008, ¶ 23 (noting that reliance upon hearsay facts or data not in evidence "does not necessarily make the hearsay itself admissible"). Admission of the other five doctors' opinions contained in the report and Dr. Parsons' testimony concerning Dr. Natarajan's opinions are even more prejudicial, and the admission of other experts' opinions has in the past constituted reversible error. *O'Kelly*, 94 N.M. at 76, 607 P.2d at 614; *Aragon*, 2010-NMSC-008, ¶ 24.

**{21}** The district court in this case was operating under the misperception that the information contained in Dr. Natarajan's autopsy report, upon which Dr. Parsons relied, was admissible because Dr. Parsons relied on it. Whether the reliance was justifiable is of no importance. *Komis*, 114 N.M. at 666 n.4, 845 P.2d at 760 n.4. The district court's position was not supported by law and caused the erroneous admission of otherwise inadmissible hearsay evidence in the report, in particular, Dr. Natarajan's opinions and the opinions of other medical examiners based on their review of the autopsy. Admission of this information through Dr. Parsons' testimony was an abuse of discretion under Rule 11-703 and inadmissible because it violated Defendant's right to confrontation.

### C. Erroneous Admission of the Report was not Harmless Error

**{22}** Admission of the report violated Defendant's constitutional right to confrontation. "When a constitutional trial error has been committed, the burden is on the [s]tate to demonstrate the error is harmless beyond a reasonable doubt. The central focus of this inquiry is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *State v. Romero*, 2006-NMCA-045, ¶ 70, 139 N.M. 386, 133 P.3d 842 (internal quotation marks and citations omitted). We may consider three factors to determine whether the error was harmless; no one factor is dispositive as we consider them together. *Aragon*, 2010-NMSC-008, ¶ 35. We evaluate whether there was "(1) substantial evidence to support the conviction without reference to the improperly admitted evidence; (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear minuscule; and (3) no substantial conflicting evidence to discredit the [s]tate's testimony." *State v. Barr*, 2009-NMSC-024, ¶ 56, 146 N.M. 301, 210 P.3d 198 (footnote omitted).

**{23}** We do not reweigh the evidence in making this determination. *Id.* ¶ 57. "[H]armless error analysis does not center on whether, in spite of the error, the right result was reached. Rather, the focus is on whether the verdict was impacted by the error." *Aragon*, 2010-NMSC-008, ¶ 35 (internal quotation marks and citation omitted). "Weighing these factors, a court must decide if it can conclude with the requisite level of certainty that an

7

error did not contribute to the jury's verdict." *State v. Macias*, 2009-NMSC-028, ¶ 39, 146 N.M. 378, 210 P.3d 804. New Mexico appellate courts in the past have held that the admission of another expert's inadmissible evidence is reversible error. *Aragon*, 2010-NMSC-008, ¶ 24; *O'Kelly*, 94 N.M. at 77, 607 P.2d at 615; *Sewell v. Wilson*, 101 N.M. 486, 488-89, 684 P.2d 1151, 1153-54 (Ct. App. 1984).

**{24}** Here, the cause and manner of death as human caused, rather than accidental, was critical. The testimony from the medical examiner regarding Cristyan's injuries and the cause of his death were the crux of the case. The wrongfully admitted report bolstered the credibility of this testimony with the unchallenged corroborative opinions of five non-testifying pathologists. The impact of Dr. Parsons' testimony is inseparable from the bolstering it received from the inadmissible original source of his information and the four other pathologists' signatures attesting to its conclusions. Thus, to remove all constitutionally offensive evidence as to the cause and manner of death, there would not be substantial evidence to convict Defendant. The testimony of Dr. Parsons was heavily intertwined with the report and was supported by it. Its impact cannot be regarded as minuscule. No other evidence could have proven that Cristyan's death was a homicide caused by Defendant's abuse. Furthermore, Dr. Parsons' statement to the jury that he was testifying for Dr. Natarajan, and the admission of the report and its included opinions provided the jury with an overwhelming quantity of unconfronted testimonial evidence that was improperly admitted. The report was the crux of the State's case, proving that Cristyan's death was a homicide.

**{25}** This constitutional violation rises to the level of harmful error because we cannot be certain that the wrongfully admitted evidence did not impact the verdict. Accordingly, we reverse Defendant's conviction and remand this matter for a new trial.

## III. CONCLUSION

**{26}** In light of the court's improper admission of the autopsy report in violation of Defendant's confrontation right, we reverse the district court and remand for a new trial consistent with our holdings here.

**{27} IT IS SO ORDERED.**

                    _____

                    **RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Chief Judge**

_____

**CYNTHIA A. FRY, Judge**

8

**Topic Index for *State v. Jaramillo*, No. 28,517**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-HE | Harmless Error |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-CT | Confrontation |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-CN | Child Abuse and Neglect |
| CL-HO | Homicide |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-CX | Cross-examination |
| CA-EX | Expert Witness |
| CA-RT | Right to Confrontation |
| CA-WT | Witnesses |
| | |
| **EV** | **EVIDENCE** |
| EV-AE | Admissibility of Evidence |
| EV-AV | Availability of Witness |
| EV-EW | Expert Witness |