# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMSC-008

Filing Date: February 12, 2010

Docket No. 31,187

STATE OF NEW MEXICO,

 Plaintiff-Respondent,

v.

ANTHONY ARAGON,

 Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Charles C. Currier, District Judge**

Hugh W. Dangler, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Respondent

## OPINION

**CHÁVEZ, Chief Justice.**

{1}     Anthony Aragon ("Defendant") appeals his conviction for possession of methamphetamine, arguing that his Sixth Amendment right to confront witnesses against him was violated when a chemical forensic report was admitted into evidence based on testimony from an analyst who had not prepared the report.  The Court of Appeals affirmed his conviction, holding that admission of the report did not implicate Defendant's confrontation rights because the report is non-testimonial hearsay under *State v. Dedman*, 2004-NMSC-037, ¶ 30, 136 N.M. 561, 102 P.3d 628.  *State v. Aragon*, No. 26,185, slip op. at 9 (N.M. Ct. App. June 4, 2008).

1

**{2}** In light of the recent Supreme Court opinion in *Melendez-Diaz v. Massachusetts*, 557 U.S. ___, 129 S. Ct. 2527 (2009) and this Court's opinion in *State v. Bullcoming*, 2010-NMSC-007, ___ N.M. ___, ___ P.3d ___ (No. 31,186, February 12, 2010), in which we overruled *Dedman*, we hold that the report prepared by the non-testifying forensic scientist and the trial testimony regarding that report were inadmissible and violated Defendant's right of confrontation. Nonetheless, we determine that the errors of admission were harmless beyond a reasonable doubt and affirm the conviction.

## I.    BACKGROUND

**{3}** On November 8, 2003, Roswell police executed a narcotic search warrant at a home in Roswell. Upon arrival, police found Defendant hiding under a tarp in the basement, and he was taken outside with the other occupants of the residence. Police found a "little clear plastic bag of a whitish, crystal substance" in the basement, "right where [Defendant's] hands were" when the officer located him. A second officer found a larger clear plastic bag in the pocket of a jacket located in an upstairs bedroom that also contained a whitish crystal-like substance. The officer took the jacket outside and asked the occupants who owned it. Defendant initially confirmed that the jacket was his, but immediately changed his response, denying ownership.

**{4}** Both plastic bags were sent to the New Mexico Department of Public Safety's Las Cruces Forensics Laboratory ("Southern Crime Laboratory") for analysis. Southern Crime Laboratory forensic chemist Eric D. Young ("Young") analyzed the larger bag that was found in the jacket pocket and prepared a report that was admitted into evidence as Exhibit 12, describing the chemical makeup of the bag's contents. Young concluded that it contained 64 percent pure methamphetamine and weighed 6.93 grams. Andrea Champagne ("Champagne"), also at that time a forensic chemist at the Southern Crime Laboratory, conducted an analysis and prepared a similar report on the contents of the smaller bag that was found near Defendant in the basement. She concluded that it was 64.3 percent pure methamphetamine and weighed 1.05 grams. Her report was admitted into evidence as Exhibit 13.

**{5}** Young testified at trial regarding the results of his analysis, the associated report, the laboratory procedure for preparing such reports, and the fact that Champagne did the analysis and prepared a similar report on the contents of the smaller bag. Young also testified regarding the contents and conclusion contained in Champagne's report. Champagne's report was admitted into evidence over defense counsel's objection that admission of the report would violate Defendant's right of confrontation because the report is inadmissible testimonial hearsay. The district court admitted both reports under the "[r]ecords of regularly conducted activity" and "[p]ublic records and reports" exceptions to the rule against hearsay, Rules 11-803(F) and (H) NMRA, respectively. Although the district court found that Champagne's chemical analysis report was "testimonial" for purposes of the Confrontation Clause, U.S. Const. amend. VI, it allowed Young to testify regarding Champagne's analysis and opinion, even though Young did not observe, supervise, or participate in either the analysis or the preparation of the report. The jury convicted Defendant on one count of possession of a controlled substance.

## II.     DISCUSSION

## A.     ADMISSION OF THE FORENSIC CHEMIST'S REPORT PREPARED BY A NON-TESTIFYING ANALYST VIOLATED DEFENDANT'S RIGHT OF CONFRONTATION.

**{6}**     Defendant contends that admission of Champagne's forensic report, identifying the white, crystal-like substance in the smaller bag as methamphetamine, violated his confrontation rights because the report is testimonial in nature, and he did not have an opportunity to cross-examine her.

> "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."   U.S. Const. amend. VI.   Out-of-court testimonial statements are barred under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court.

*State v. Zamarripa*, 2009-NMSC-001, ¶ 23, 145 N.M. 402, 199 P.3d 846 (filed 2008) (citing *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004)).   Questions of admissibility under the Confrontation Clause are questions of law, which we review de novo. *Id.* ¶ 22.   In *Crawford*, the Supreme Court "once again reject[ed] the view that the Confrontation Clause applies of its own force only to in-court testimony[.]"   541 U.S. at 50.   Rather, *Crawford* held that "[i]t applies to witnesses against the accused—in other words, those who bear testimony,"—where "testimony" is a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51 (internal quotation marks and citation omitted).   Therefore, only testimonial statements "cause the declarant to be a witness within the meaning of the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006) (internal quotation marks and citation omitted).   Although it did not offer a comprehensive definition of "testimonial," the Court identified a "core class of testimonial statements":

> *ex parte* in-court testimony or its functional equivalent . . . that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially[;] . . . extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions[;] . . . statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[;] and to police interrogations.

*Crawford*, 541 U.S. at 51-52, 68 (internal quotation marks and citations omitted).   Such testimonial hearsay is barred by the Sixth Amendment unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. *Id.* at 53-54, 68.   *Crawford* also reiterated the Court's prior holding in *California v. Green*, 399 U.S. 149, 162 (1970), that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. . . .   The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Crawford*, 541 U.S. at 59 n.9 (citation omitted).

3

"The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* (citation omitted). Once it has been established that the Confrontation Clause does not bar admission of the statement, the rules of evidence govern whether the statement is admissible.

**{7}** Eight months after the United States Supreme Court filed its opinion in *Crawford*, we issued our opinion in *Dedman*, and held that blood-alcohol reports prepared by the New Mexico Department of Public Health's Scientific Laboratory Division are admissible hearsay under the "public record" exception of Rule 11-803(H). 2004-NMSC-037, ¶ 24. We determined that the reports were non-testimonial because although they are "prepared for trial, the process is routine, non-adversarial, and made to ensure an accurate measurement." *Id.* ¶ 30. We were persuaded that laboratory personnel are "not law enforcement, and the report is not investigative or prosecutorial." *Id.* Ultimately, we concluded that such forensic reports were "very different from the other examples of testimonial hearsay evidence: 'prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and . . . police interrogations.'" *Id.* (quoting *Crawford*, 541 U.S. at 68).

**{8}** Since we decided *Dedman*, the United States Supreme Court has issued its fractured opinion in *Melendez-Diaz*. In *Melendez-Diaz*, the Court held that affidavit reports prepared and sworn to by analysts at a state crime laboratory identifying a substance as cocaine "are functionally identical to live, in-court testimony, doing precisely what a witness does on direct examination," and so "fall within the core class of testimonial statements[.]" 557 U.S. at ___, 129 S. Ct. at 2532 (internal quotation marks and citations omitted). Analysts are witnesses against defendants because, in the case of narcotics, they prove a fact necessary for conviction: that the substance in question is the contraband the prosecution alleges it to be. *See id.* at ___, 129 S. Ct. at 2533. In essence, a person is a witness for Confrontation Clause purposes when that person's statements go to an issue of guilt or innocence. *See id.* at ___ n.8, 129 S. Ct. at 2539 n.8. Therefore, "[a]bsent a showing that the analysts were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to be confronted with the analysts at trial." *Id.* at ___, 129 S. Ct. at 2532 (internal quotation marks and citation omitted).

**{9}** The State urges us to adhere to our opinion in *Dedman* and limit the application of *Melendez-Diaz*. The State's arguments can be categorized as follows: (1) Justice Thomas's narrow concurring opinion is controlling because his vote resulted in a majority opinion and limited testimonial evidence to matters under oath, (2) the analyst's report is inherently reliable and should therefore be admissible as a business or public record, (3) forensic witnesses are not ordinary witnesses in that they do not observe the crime or any human activity related to the crime, and (4) because Defendant could cross-examine Young, who testified about the report, Defendant's confrontation rights were not violated. We reject the State's arguments because we believe that in *Davis* a clear majority of the United States Supreme Court rejected Justice Thomas's limitation, *Melendez-Diaz* directly answers the State's second and third arguments, and Defendant could not effectively cross-examine Young, because Young did not express an opinion independent from the opinion in Champagne's forensic report.

**1.      JUSTICE THOMAS'S POSITION IN HIS CONCURRENCE WAS**

REJECTED IN THE *DAVIS* EIGHT JUSTICE MAJORITY OPINION.

**{10}** The report in this case, State's Exhibit 13, a copy of which is attached to this opinion, is a single-page report that identifies the item received by the evidence custodian, the examination requested, and the result. The forensic chemist signed the report and certified that the "report is a record of New Mexico Department of Public Safety Southern Crime Laboratory, and the contents of the report is [sic] true and correct to the best of my knowledge." The State contends that because the report is not an affidavit, it is distinguishable from the reports held to be testimonial in *Melendez-Diaz,* and thus it does not "implicate[] the core class of testimonial statements protected by the Confrontation Clause[.]"

**{11}** The State relies on Justice Thomas's narrow concurring opinion and argues that his concurring opinion severely limits the *Melendez-Diaz* holding to only "formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions." 557 U.S. at ___, 129 S. Ct. at 2543 (Thomas, J., concurring) (internal quotation marks and citation omitted). We disagree and find it significant that in *Davis*, the United States Supreme Court noted that it would not make sense to allow the recitation of informal notes to be admitted into evidence against an accused without confrontation, while excluding affidavits simply because they are more formal.

> [W]e do not think it conceivable that the protections of the Confrontation Clause can readily be evaded by having a note-taking policeman *recite* the unsworn hearsay testimony of the declarant, instead of having the declarant sign a deposition. Indeed, if there is one point for which no case-English or early American, state or federal-can be cited, that is it.

*Davis*, 547 U.S. at 826. The formal affidavits in *Melendez-Diaz* "are incontrovertibly a solemn declaration of affirmation made for the purpose of establishing or proving some fact[,]" *Davis*, 547 U.S. at 826; 557 U.S. at ___, 129 S. Ct. at 2532 (internal quotation marks and citations omitted), and represent the "paradigmatic case" implicating the "core of the right to confrontation," but do not demarcate "its limits." *Id.* at ___, 129 S. Ct. at 2534.

**{12}** The fact that the report at issue in the present case is not sworn to by the forensic chemist who prepared it, therefore, does not insulate it against Defendant's right of confrontation. It would be nonsensical to admit an out-of-court statement that proves an element of an offense simply because it was not a statement under oath when a sworn statement proving the same element would be inadmissible.

## 2. RELIABILITY

**{13}** The State argues, as reasoned in *Dedman*, that the chemist's report at issue is inherently reliable because it is objective and aimed at "getting to the bottom of the matter." *See* 2004-NMSC-037, ¶¶ 24, 30 (stating that blood-alcohol reports "follow a routine manner of preparation that guarantees a certain level of comfort as to their trustworthiness" and are "made to ensure an accurate measurement") (citation omitted). *Melendez-Diaz* directly addresses the

argument that forensic reports are the product of "neutral, scientific testing."  557 U.S. at ___, 129 S. Ct. at 2536 (internal quotation marks and citation omitted).  The Court noted that "[f]orensic evidence is not uniquely immune from the risk of manipulation[,]" and "sometimes [forensic analysts] face pressure to sacrifice appropriate methodology for the sake of expediency[,]" and may "alter the evidence in a manner favorable to the prosecution."  *Id.* (internal quotation marks and citation omitted).  While there may be other and perhaps better methods to challenge or verify the results of a forensic test, "the Constitution guarantees one way:  confrontation."  *Id.*  As the Court stated in *Crawford*, "[t]he Framers would be astounded to learn that *ex parte* testimony could be admitted against a criminal defendant because it was elicited by 'neutral' government officers."  541 U.S. at 66.  As *Crawford* made clear, the reliability of a testimonial statement is not a measure of its susceptibility to the right of confrontation.  *See id.* at 61 ("Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation.").

{14}    The reliability test for testimonial evidence was abandoned when *Crawford* overruled *Ohio v. Roberts*, 448 U.S. 56 (1980).  541 U.S. at 61-62; *see also Melendez-Diaz*, 557 U.S. at ___, 129 S. Ct. at 2533 (noting that the *Roberts* theory "that unconfronted testimony was admissible as long as it bore indicia of reliability" was rejected).  This Court applied the *Roberts* reliability test in *Dedman* to blood alcohol reports because we determined that the reports were non-testimonial.  Following *Melendez-Diaz* and our opinion in *Bullcoming*, however, we now hold that such forensic reports[1] are testimonial in nature. Therefore, any consideration of their reliability is irrelevant to a determination of confrontation requirements.  That Young considered himself objective and simply tried to get to the bottom of the matter have no bearing on the analysis.

{15}    The State also contends that the analysts' reports are not susceptible to confrontation because of their routine nature as business records under Rule 11-803(F) and as public records under Rule 11-803(H).  The State argues that while the forensic chemists are government officers in this case, the forensic reports at issue are produced as part of a non-adversarial, routine process, and although they were prepared for trial, the reports were not prepared as testimony for trial.  We reject this contention because Young's testimony belies the argument that the reports are not prepared as testimony and *Melendez-Diaz* refutes such an argument.

{16}    Young testified that his analytical process and reporting were done in the "normal and ordinary course of business," meaning only that such procedures and analyses are frequently conducted by the Southern Crime Laboratory.  Although generating and maintaining such reports are "part of the duties and responsibilities" of the laboratory, Young testified that the majority of the work done at the laboratory is "for criminal prosecution purposes."  Indeed, Young testified that he expects that he will be called to testify in court regarding all of the reports he prepares.  Testifying in a broader sense, Young was not able to think of any other purpose for the laboratory's forensic analyses, except perhaps when it receives requests from hospitals.  Even in those circumstances,

---

[1]Laboratory reports that only record chain of custody or the maintenance history of the machine may not offend the Confrontation Clause.  *See Melendez-Diaz*, 557 U.S. at ___ n.1, 129 S. Ct. at 2532 n.1.

6

hospital personnel must contact a police officer to have the materials submitted to the laboratory for analysis, which indicates the prosecutorial nature of the laboratory's work. In fact, Young testified that the only way to submit materials to the laboratory for analysis is by a police officer, even though the laboratory is ostensibly open and available to the public. Further, while the forensic laboratory is no longer a division of the State Police, it operates as a technical support division of the Department of Public Safety, which oversees the State Police. *See* NMSA 1978, § 9-19-7(D) (2007). The New Mexico Administrative Code also specifies that forensic laboratory notes and reports are included in the "bar coded evidence analysis statistics and tracking database" employed by the Department of Public Safety, and consequently the State Police. *See* 1.18.790.172 NMAC (5/14/2007) (emphasis omitted); § 9-19-7(A) ("The department shall have access to all records, data and information of . . . its own organizational units, not specifically held confidential by law."). Therefore, both the facts and Young's testimony indicate that the purpose for conducting forensic analyses and reporting the results has nothing to do with administering the agency as either a business or a separate entity, no matter how broadly defined, and everything to do with prosecuting criminal cases at trial.

**{17}**    Next, the State's argument that the reports are admissible because they are routine under Rules 11-803(F) and (H) is answered by *Melendez-Diaz* and must be rejected. The relevant portions of Rules 11-803(F) and (H)[2] are identical to Federal Rules of Evidence 803(6) and (8), which are discussed in *Melendez-Diaz*[3]. *See* 557 U.S. at ___, 129 S. Ct. at 2538. Our analysis in *Dedman*,

---

[2]Rule 11-803(F) provides for the admission of a

> memorandum, report, record or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in
> the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation[.]

The term "business" is defined broadly in the rule to include "business, institution, association, profession, occupation and calling of every kind, whether or not conducted for profit." *Id.* Rule 11-803(H) provides for the admission of

> [r]ecords, reports, statements or data compilations, in any form, of public offices or agencies, setting forth (1) the activities of the office or agency, (2) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel[.]

[3]Because of the similarities between the rules, we find federal case law instructive in interpreting the state rule. *State v. Lopez*, 1997-NMCA-075, ¶ 10, 123 N.M. 599, 943 P.2d 1052.

7

which was filed before the opinion in *Melendez-Diaz*, qualified the defendant's blood alcohol report as a public record under the meaning of Rule 11-803(H) on the basis of the underlying reliability and trustworthiness of the reports. *Dedman*, 2004-NMSC-037, ¶ 24 (noting that "reports follow a routine manner of preparation that guarantees a certain level of comfort as to their trustworthiness"). The *Dedman* Court reiterated our prior determination that Rule 11-803(H) is aimed at excluding "reports of law enforcement personnel engaged in investigative and prosecutorial activities." *Dedman*, 2004-NMSC-037, ¶ 24 (internal quotation marks and citation omitted). The *Dedman* Court determined that analysts at the Scientific Laboratory Division are neither police officers nor law enforcement personnel and that the reports are "prepared in a non-adversarial setting." *Id.* Given that nothing in the *Dedman* record indicated that standard laboratory procedures were not followed or that the results were unreliable, and given that the *Dedman* Court determined that the laboratory analysts in question were not law enforcement personnel, the Court upheld admittance of the blood alcohol report as a public record under Rule 11-803(H). *Dedman*, 2004-NMSC-037, ¶ 24.

**{18}** In *Melendez-Diaz*, the Supreme Court expressly rejected the argument that such reports are admissible without confrontation for being "akin to the types of official and business records admissible at common law[,]" because the Court determined that they "do not qualify as traditional official or business records" since they are specifically prepared for use at trial. 557 U.S. at ___, 129 S. Ct. at 2538 (internal quotation marks and citation omitted). Quoting *Palmer v. Hoffman*, 318 U.S. 109, 114 (1943), the *Melendez-Diaz* Court reiterated its holding that such reports do "not qualify as . . . business record[s] because, although kept in the regular course of . . . operations, [they are] 'calculated for use essentially in the court, not in the business.'" 557 U.S. at ___, 129 S. Ct. at 2538. The *Palmer* Court made it clear that the business records exception, now termed "[r]ecords of regularly conducted activity," *see* Fed. R. Evid. 803(6) advisory committee note, was meant to apply to "entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls" and that relate to the "management or operation of the business[.]" 318 U.S. at 113. Such records are considered inherently trustworthy, as opposed to records that are created as a "system of recording events or occurrences" that have "little or nothing to do with the management or operation of the business" such as "employees' versions of their accidents." *Id.* Broadening the rule to incorporate "any regular *course of conduct which may have some relationship to business* . . . opens wide the door to avoidance of cross-examination" because then entities could make recording certain activities that are not covered under the business records exception a routine event. *Id.* at 114 (emphasis added) (internal quotation marks omitted). Therefore, "[b]usiness and public records are generally admissible *absent confrontation*[,]" not only because they qualify under an exception to the hearsay rules, but because they are not testimonial, "having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial." *Melendez-Diaz*, 557 U.S. at ___, 129 S. Ct. at 2539-40 (emphasis added).

**{19}** The chemical forensic reports at issue in this case are inadmissible absent confrontation, because although it is the "business" of the Southern Crime Laboratory, a public agency, to analyze substances for narcotic content, the laboratory's purpose for preparing chemical forensic reports is for their use in court, not as a function of the laboratory's administrative activities. These reports

are precisely the type of out-of-court statement that must be excluded under *Palmer*, because admitting them "opens wide the door to avoidance of cross-examination[.]" 318 U.S. at 114. As a result, Champagne's chemical forensic report and Young's testimony about her report were not admissible and violate Defendant's right of confrontation if Defendant is deprived of meaningful cross-examination.

### 3. ORDINARY WITNESS

{20} The State also argues that Champagne is not an "ordinary" witness, because she did not "perceive[] an event that gave rise to a personal belief in some aspect of the defendant's guilt." *Melendez-Diaz*, 557 U.S. at ___, 129 S. Ct. at 2551 (Kennedy, J., dissenting). Quoting *Dedman*, the State contends that the forensic report in question, although it was prepared for trial, was created in a routine manner, was non-adversarial, and was meant to ensure accuracy, so it must be treated differently than testimonial hearsay under a Confrontation Clause analysis. 2004-NMSC-037, ¶ 30. We disagree, and hold that, to the extent *Bullcoming* overruled *Dedman*, chemical forensic reports of the type at issue in this case are testimonial, and their admission violated Defendant's right of confrontation.

{21} Champagne's report, in fact, goes directly to an issue of guilt in that it identifies the white, crystal-like substance located near Defendant's hiding place as methamphetamine, a necessary element of the crime of possession of a controlled substance, for which Defendant was charged. As such, Champagne's report serves to bear testimony against Defendant, and is the functional equivalent of live, in-court testimony that would otherwise be offered directly by Champagne herself. For this reason, the prosecution must produce her for cross-examination, or admission of the report is barred by the Confrontation Clause.

{22} The State, relying on the dissent in *Melendez-Diaz,* also suggests that forensic analysts are not "ordinary witnesses" because they "observe[d] neither the crime nor any human action related to it." 557 U.S. at ___, 129 S. Ct. at 2552 (Kennedy, J., dissenting). In refuting this variation of the argument that analysts are not accusatory witnesses, *Melendez-Diaz* rejects this "novel exception" to the right of confrontation because it "would exempt all expert witnesses–a hardly 'unconventional' class of witnesses." *Id.* at ___, 129 S. Ct. at 2535. Encapsulated within this approach is the Court's rejection of the theory that only testimony elicited by interrogation implicates the right of confrontation. *Id.* ("The Framers were no more willing to exempt from cross-examination volunteered testimony or answers to open-ended questions than they were to exempt answers to detailed interrogation.") (internal quotation marks and citation omitted)). Whether produced through interrogation or volunteered, the analysts' affidavits in *Melendez-Diaz* "were presented in response to a police request" and "suffice[] to trigger the Sixth Amendment's protection[,]" so they "should be subject to confrontation as well." *Id.* Similarly, Champagne's report was also presented in response to a police request and should be subject to confrontation by Defendant.

### B. TRIAL TESTIMONY REGARDING THE ABSENT CHEMIST'S REPORT WAS TESTIMONIAL HEARSAY AND VIOLATED DEFENDANT'S RIGHT OF

**CONFRONTATION.**

**{23}** The State also contends that admission of Champagne's chemical forensic report did not violate Defendant's confrontation rights in any meaningful way because Young testified about the report and was subject to cross-examination. The State's argument would have merit if Young had expressed his own opinion based upon the underlying data that contributed to the opinion announced in the report. It is proper to "admit opinion testimony based, *in part*, upon reports of others which are not in evidence but which the expert customarily relies upon in the practice of his profession." *State v. Chambers*, 84 N.M. 309, 311, 502 P.2d 999, 1001 (1972) (emphasis added) (internal quotation marks and citation omitted); *see also O'Kelly v. State*, 94 N.M. 74, 77, 607 P.2d 612, 615 (1980) (noting that "Rule [11-]703 [NMRA,] which governs the permissible bases upon which the opinion of an expert may be founded," provides that experts may rely upon or otherwise base their opinions on "facts or data," but not merely the oral or written opinions of non-testifying experts (citations omitted)). However, reliance upon such hearsay facts or data, or partial reliance upon another expert's opinion that is not in evidence, to form an independent expert opinion does not necessarily make the hearsay itself admissible. *See Sewell v. Wilson*, 101 N.M. 486, 489, 684 P.2d 1151, 1154 (Ct. App. 1984) (citations omitted).

**{24}** We have previously held that the admission into evidence of reports containing the opinions of non-testifying experts is prejudicial error. *O'Kelly*, 94 N.M. at 76, 607 P.2d at 614. In *O'Kelly*, the testifying expert simply restated the hearsay opinion of a non-testifying expert on direct examination and the testimony was admitted at trial over the defendant's objection. *Id.* On appeal, we held that the admission of the non-testifying expert's opinion was reversible error because a testifying expert is limited by Rule 11-703 to relying on "facts or data" in forming an opinion, and so is precluded from relying "upon the oral or written opinion of another expert." *O'Kelly*, 94 N.M. at 77, 607 P.2d at 615 (citations omitted); *see also Sewell*, 101 N.M. at 490, 684 P.2d at 1154 (holding that hearsay opinion letter of non-testifying expert was improperly admitted through testimony of expert because it was "opinion").

**{25}** The rationale for this holding is grounded in both the right of confrontation and concern for ensuring the opportunity for effective cross-examination as demonstrated by the cases relied upon by this Court in *O'Kelly*. Among the cases *O'Kelly* cited for support was *United States v. Bohle*, 445 F.2d 54 (7th Cir. 1971), *overruled by United States v. Lawson*, 653 F.2d 299, 303 n.12 (7th Cir. 1981) (noting that *Bohle* "was written prior to the adoption of the Federal Rules of Evidence"), which held that a doctor's in-trial restatement of the hearsay opinion of a non-testifying expert was inadmissible because the defendant had no opportunity for effective cross-examination regarding the hearsay opinion.[4] *Bohle*, 445 F.2d at 69. *Bohle* was nominally overruled by *Lawson* following

---

[4]It should be noted that in *Bohle* the testifying expert based his opinion only in part upon the non-testifying expert's hearsay opinion, but the testifying expert's opinion still was held to be inadmissible. Our case law, however, allows partial reliance on another expert's opinion. *See Chambers*, 84 N.M. at 311, 502 P.2d at 1001. Our reliance on *Bohle* in the *O'Kelly* opinion illustrates the rationale behind our concern when an expert relies upon the

adoption of the Federal Rules of Evidence in 1975,[5] but the *Lawson* Court restated the same principles in even stronger language.

> In criminal cases, a court's inquiry under Rule 703 must go beyond finding that hearsay relied on by an expert meets these standards. An expert's testimony that was based entirely on hearsay reports, while it might satisfy Rule 703, would nevertheless violate a defendant's constitutional right to confront adverse witnesses. The Government could not, for example, simply produce a witness who did nothing but summarize out-of-court statements made by others. A criminal defendant is guaranteed the right to an effective cross-examination.

*Lawson*, 653 F.2d at 302 (footnotes omitted). We find *Lawson*'s rationale persuasive.

**{26}** Therefore, we must determine whether Young's testimony was an expression of his own opinion or whether he was merely parroting Champagne's opinion. Our review of the record leads us to the conclusion that Young was merely repeating the contents of Champagne's report and her opinion.

**{27}** Champagne's report was admitted during Young's testimony despite Defendant's objection. After reviewing the report, Young testified about Champagne's analysis and opinion, as follows:

> [Prosecutor]: Okay, what is the result of that analysis?
> Young: The results are methamphetamine was identified.
> [Prosecutor]: Okay, how much?
> Young: I believe it was 1.05 grams.
> [Prosecutor]: And is there a purity in that?
> Young: Yes, sir.
> [Prosecutor]: What's the purity?
> Young: It turned out at 64.3%.

**{28}** On cross-examination, Young acknowledged that he had neither seen, analyzed, nor treated any of the evidence Champagne used to create her report. He testified that he had not weighed the evidence, nor had he conducted gas chromatography or mass spectrometry on it. Young further testified that (1) he had not done a purity analysis of the substance, (2) he had not performed any

---

opinion of another expert: The opposing party has no opportunity to cross-examine the basis for the hearsay opinion because the opinion is not the testifying expert's own opinion. This is especially true when, as is the situation in this case, the testifying expert relies *solely* on the opinion of another expert.

[5]An Act to establish rules of evidence for certain courts and proceedings, Pub. L. No. 93-595, 88 Stat. 1926 (1975) (providing that the rules enacted therein are to be known as the "Federal Rules of Evidence").

chemical testing on it, and (3) he had not supervised Champagne's analytical work. Rather, he testified ambiguously on cross-examination that "all I can do is look at the evidence and what [sic] I agree with her results. That's all I can do and from her results and testing materials and notes I agree with what she has."

{29}   It is not clear from Young's testimony whether he relied upon his own analysis of the underlying facts and data contributing to Champagne's opinion to arrive at his own, independent conclusion. A fair reading of the transcript shows that Young's testimony was a restatement of Champagne's conclusory opinion regarding the narcotic content of the substance, its weight, and its purity as stated in her hearsay report marked Exhibit 13. The prosecutor never asked Young whether he had analyzed the raw data that contributed to the opinion in Exhibit 13, nor was Young asked whether he had an opinion regarding whether the substance was a narcotic and, if so, the degree of its purity.

{30}   The determinations of whether a substance is narcotic and its degree of purity—two conclusions that presumably require some expert judgment to compare the computerized analytical results with reference data—must be classified as "opinion," rooted in the assessment of one who has specialized knowledge and skill. Champagne ostensibly used her training, skill, and knowledge to form an opinion that the substance in question was methamphetamine. *Cf. Bullcoming*, 2010-NMSC-007, ¶ 25 (holding that the results of the gas chromatograph BAC test do not constitute expert opinion, but rather constitute "facts and data" of the type reasonably relied upon by experts). That expert determination was in turn employed by the prosecution to prove one element of the crime with which Defendant was charged. Defendant therefore had a right to challenge the judgment and conclusions behind Champagne's opinion. Because she did not testify, her opinion could not be effectively challenged. *See Vermont v. Towne*, 453 A.2d 1133, 1135 (Vt. 1982) (holding that admission of non-testifying expert's opinion through testifying expert's testimony precluded cross-examination and violated Confrontation Clause).

{31}   The State would have us hold that forensic chemists and their testimony are fungible for purposes of the Confrontation Clause. The State's argument seems to be that Champagne would have given the same testimony as did Young because she would have been relying upon her report to the same extent that Young relied upon it. Citing the Court of Appeals opinion in *State v. Christian*, 119 N.M. 776, 783, 895 P.2d 676, 683 (Ct. App. 1995), the State argues that Champagne probably would not have remembered preparing Defendant's report and probably would have relied upon her laboratory notes to testify. Thus, the State contends that Young was equally qualified to "interpret" Champagne's notes, which were available for Defendant to examine, so he could properly stand in her place to testify without any "meaningful" interference with Defendant's right of confrontation.

{32}   We hold that the *Christian* confrontation analysis is no longer sound. *Christian* was decided before *Crawford* and *Melendez-Diaz*, so its confrontation analysis, based on necessity and reliability, is no longer good law. *See Christian*, 119 N.M. at 782, 895 P.2d at 682 ("The confrontation clause places two conditions on the admission of hearsay evidence: necessity and reliability."). As we described earlier in this opinion, the confrontation analysis has become more sharply focused since

12

*Crawford*. 541 U.S. at 59 ("Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."). Neither necessity nor reliability now function as exceptions to the Confrontation Clause requirement of cross-examination. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006) ("We rejected that [indicia of reliability] argument . . . in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), saying that the Confrontation Clause 'commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.'"). The only possible exception mentioned in *Crawford* is a testimonial statement made by a child victim of sexual assault. 541 U.S. at 58 n.8. Because such statements are not at issue in this case, we hold that the State's reliance on *Christian* is misplaced. Experts and their opinions are not fungible when the testifying expert has not formed an independent conclusion from the underlying facts or data, but merely restates the hearsay opinion of a non-testifying expert.

**{33}** Young's testimony regarding Champagne's report violated Defendant's right of confrontation because it introduced Champagne's opinion, not his. Because it was Champagne's opinion, Defendant was entitled to cross-examine Champagne on a number of issues, including what test she performed, whether the test was routine, whether the test results required interpretation and the exercise of judgment, the use of skills she did not possess, any bias she might have, the risks of error in interpreting the results, and whether she made such errors. Had Young unequivocally testified that it was his opinion that the substance at issue was methamphetamine weighing 1.05 grams with a 64.3% purity, Defendant could have cross-examined him concerning these opinions. The basis for such opinion might have been the underlying data and Champagne's notes if Young testified that these are the types of facts or data reasonably relied upon by chemical forensic experts in forming opinions. *See* Rule 11-703. Indeed, the underlying data and notes may have been admitted consistent with Rule 11-703 had the court determined "that their probative value in assisting the jury to evaluate the expert's opinion substantially outweigh[ed] their prejudicial effect." *Id.* Under such circumstances, Defendant would have had the opportunity to effectively cross-examine Young, and his right to confrontation would not have been violated.

## C.    ADMISSION OF THE HEARSAY REPORTS AND TESTIMONY WAS HARMLESS ERROR.

**{34}** As its final argument, the State contends that any error in admitting Champagne's report was harmless error beyond a reasonable doubt. Defendant maintains, without arguing the matter, that the admissions were not harmless. We reject Defendant's unsupported argument and hold that the admissions were harmless error.

**{35}** "[A] reviewing court should only conclude that a[] [constitutional] error is harmless when there is no reasonable possibility it affected the verdict." *State v. Barr*, 2009-NMSC-024, ¶ 53, 146 N.M. 301, 210 P.3d 198 (internal quotation marks and citations omitted). Three factors may be considered when determining whether constitutional error meets the standard of harmlessness. *Id.* ¶ 55. "No one factor is determinative; rather, they are considered in conjunction with one another." *Id.*

13

The factors are whether there is: (1) substantial evidence to support the conviction without reference to the improperly admitted evidence; (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear minuscule; and (3) no substantial conflicting evidence to discredit the State's testimony.

*Id.* ¶ 56 (footnote omitted). "[W]hen assessing the harmfulness of error, it is not the role of the appellate court to reweigh the evidence against a defendant[.]" *Id.* ¶ 57. Therefore, "[t]he harmless error analysis does not center on whether, in spite of the error, the right result was reached. Rather, the focus is on whether the verdict was impacted by the error." *Id.* "Weighing these factors, a court must decide if it can conclude with the requisite level of certainty that an error did not contribute to the jury's verdict." *State v. Macias*, 2009-NMSC-028, ¶ 39, 146 N.M. 378, 210 P.3d 804.

{36}    Under the facts of this case, we determine that there was no reasonable possibility that the improperly-admitted evidence affected the verdict. Even if Exhibit 13 had been excluded, as well as Young's testimony on Champagne's opinion and conclusions, the record still establishes that there was sufficient evidence for a jury to convict Defendant on the single count of possession of a controlled substance. Young's testimony regarding his independent conclusion in Exhibit 12[6] that the larger bag found in the jacket pocket contained methamphetamine, based on his own chemical analysis, provided a sufficient, independent basis, without reference to the improperly-admitted evidence, for the jury to find Defendant guilty of possessing methamphetamine. Defendant was charged with one count of possession in violation of NMSA 1978, Section 30-31-23(D) (1972) (amended 2005). "Section 30-31-23 is unambiguous; a plain reading of the provision indicates that any clearly identifiable amount of a controlled substance is sufficient evidence to support a conviction for possession of a controlled substance." *State v. Wood*, 117 N.M. 682, 685, 875 P.2d 1113, 1116 (Ct. App. 1994). There was no evidence that contradicted Young's testimony regarding the larger bag of methamphetamine and Defendant has not argued that the evidence was not sufficient to support a finding that he was in possession of the jacket. Proof beyond a reasonable doubt that one of the two bags contained methamphetamine was all that was necessary to sustain the conviction. Therefore, the effect of excluding evidence relating to the smaller bag would have been inconsequential. Admission of the Champagne report was harmless error beyond a reasonable doubt.

## III.    CONCLUSION

{37}    For the foregoing reasons, we conclude that Champagne's chemical forensic report and Young's trial testimony regarding that report violated Defendant's right of confrontation and were inadmissible. Nonetheless, we find the error of their admission harmless and affirm Defendant's conviction.

---

[6]Defendant abandoned his argument raised in the district court that Exhibit 12 is inadmissible hearsay, so we do not address that issue.

14

{38}    **IT IS SO ORDERED.**

_____

**EDWARD L. CHÁVEZ, Chief Justice**

**WE CONCUR:**

_____

**PATRICIO M. SERNA, Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**RICHARD C. BOSSON, Justice**

_____

**CHARLES W. DANIELS, Justice**

**Topic Index for _State v. Aragon_, No. 31,187**

| **AE** | **Appeal and Error** |
|---|---|
| AE-CF | Certiorari |
| AE-HE | Harmless Error |

| **CT** | **Constitutional Law** |
|---|---|
| CT-CT | Confrontation |

| **CL** | **Criminal Law** |
|---|---|
| CL-CL | Controlled Substances |
| CL-PS | Possession |

| **CA** | **Criminal Procedure** |
|---|---|
| CA-CX | Cross-examination |
| CA-EX | Expert Witness |

| **EV** | **Evidence** |
|---|---|
| EV-AE | Admissibility of Evidence |
| EV-AV | Availability of Witness |
| EV-CX | Cross-Examination |
| EV-EW | Expert Witness |
| EV-ON | Opinion |
| EV-PK | Personal Knowledge |
| EV-PB | Probative Value vs. Prejudicial Effect |