This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37732**

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.

**SHANE SANDOVAL,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Hector H. Balderas, Attorney General
Anne Minard, Assistant Attorney General
Santa Fe, NM

for Appellee

Liane E. Kerr
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Defendant Shane Sandoval appeals his convictions for criminal sexual penetration in the first degree (child under thirteen years of age), contrary to NMSA 1978, Section 30-9-11(D)(1) (2009), and selling or giving alcoholic beverages to a minor, contrary to NMSA 1978, Section 60-7B-1(A)(1) (2013). Defendant argues that the district court (1) erred in denying a continuance in this matter; (2) improperly excluded Defendant's child trauma expert and erred in limiting the testimony of Defendant's DNA expert; and (3) erroneously admitted Facebook messages. We affirm.

### BACKGROUND

**{2}** Albuquerque Police Department Special Agent Kyle Hartsock was contacted by New Day Youth and Family Services (New Day) in response to a request that he speak with D.H., a sixteen-year-old resident of the shelter, and N.A., a twelve-year-old resident of the shelter, regarding allegations that N.A. had been sexually assaulted by Defendant. D.H. had met Defendant, known to them only as "Shane," on Facebook two days earlier. D.H. and N.A. reported that they left New Day in order to meet Defendant. Defendant drove them from New Day but was stopped by APD Officer Zachary Herbst not long afterward. During the stop, Officer Herbst informed Defendant that N.A. was twelve years old. Another officer returned D.H. and N.A. to New Day, but they left again at 2:32 a.m., this time in an Uber ordered by Defendant. The Uber delivered D.H. and N.A. to the apartment complex where Defendant lived.

**{3}** Defendant and another male, Leon Harker, met D.H. and N.A. and led them to Defendant's apartment. Once inside, Defendant and D.H. began drinking alcohol and later departed to the bedroom. N.A. testified that Harker sexually assaulted her while Defendant and D.H. were in the bedroom. The next morning, Harker and D.H. left the apartment, leaving N.A. alone with Defendant. Defendant began propositioning N.A., ultimately leading her to the floor of the apartment where he removed her pants and underpants, spit on her vagina, and penetrated her with his penis.

**{4}** Following a jury trial, Defendant was found guilty of criminal sexual penetration in the first degree and selling or giving alcoholic beverages to a minor. He appeals.

## DISCUSSION

**{5}** We note at the outset of our discussion that Defendant raised numerous issues in headings in his brief in chief but failed to provide argument addressing many of those points. Appellate courts are under no obligation to review undeveloped arguments, and we confine our review to those issues Defendant addressed substantively in his briefing. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031.

### I. Denial of Continuance

**{6}** Defendant argues that the district court erred by denying his motion for a continuance. Approximately three months before trial, the district court completed an in camera review of D.H.'s and N.A.'s records from the Children, Youth and Families Department (CYFD). One week after the records were made available to Defendant, he sought a continuance to interview N.A. again. Defendant also asked to have the discovery deadline and trial date continued. The district court denied Defendant's motion, and the case proceeded to trial as scheduled on June 18, 2018.

**{7}** "The grant or denial of a motion for a continuance rests within the sound discretion of the trial court, and the burden of establishing an abuse of discretion rests with the defendant." *State v. Torres*, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20 (internal quotation marks and citation omitted). *Torres* set forth a number of factors that courts should consider when evaluating a motion for continuance. *Id.* Defendant's

argument on appeal provides only a general statement of that standard and does not address how those factors apply in this case. Defendant's conclusory claim of prejudice is likewise insufficient to demonstrate error. *See Lukens v. Franco*, 2019-NMSC-002, ¶ 5, 433 P.3d 288 ("When a criminal conviction is being challenged, counsel should properly present this [C]ourt with the issues, arguments, and proper authority. Mere reference in a conclusory statement will not suffice and is in violation of our rules of appellate procedure." (internal quotation marks and citation omitted)). Accordingly, because Defendant has not met his burden to demonstrate an abuse of discretion, we affirm.

## II.      Exclusion and Limitation of Defense Experts

## A.      Child Trauma Expert

**{8}**     Defendant argues that the district court erred in excluding the testimony of Dr. Maxann Shwartz, his proposed expert in the area of child psychology and behavioral issues, on timeliness grounds. He alleges that the delay in disclosing Dr. Shwartz was due to the district court's delay in completing the in camera review of N.A.'s CYFD records. After a careful review of the record and the hearing, we find no abuse of discretion in the district court's ruling.

**{9}**     This case was governed by LR2-308 NMRA, the special case management pilot program for criminal cases pending in the Second Judicial District Court. Under the local rule, if a party fails to comply with the time limits imposed by a scheduling order, the court is required to impose sanctions. LR2-308(H)(1). While the imposition of sanctions is mandatory, the district court has discretion regarding the type of sanction to impose, subject to the considerations enunciated in *State v. Harper*, 2011-NMSC-044, ¶¶ 15-16, 150 N.M. 745, 266 P.3d 25: (1) the culpability of the offending party; (2) the prejudice to the adversely affected party; and (3) the consideration of lesser sanctions. *See State v. Lewis*, 2018-NMCA-019, ¶ 11, 413 P.3d 484; *see also State v. Le Mier*, 2017-NMSC-017, ¶ 20, 394 P.3d 959 (stating that the district court "must evaluate the considerations identified in *Harper*—culpability, prejudice, and lesser sanctions—when deciding whether to exclude a witness"). As our Supreme Court noted in *Le Mier*, "it is not the case that witness exclusion is justified only if all of the *Harper* considerations weigh in favor of exclusion." *Le Mier*, 2017-NMSC-017, ¶ 20. We review the district court's decision for an abuse of discretion. *See id.* ¶ 22.

**{10}**   In this case, two of the three factors outlined in *Harper* weigh in favor of exclusion, and the parties failed to address the third factor altogether. Regarding the first factor, Defendant maintains that the delay in the disclosure was occasioned by the district court's in camera review of N.A.'s CYFD records such that the State and the district court are culpable for the delay. We disagree. Defendant disclosed Dr. Shwartz on May 15, 2018, approximately one month before trial. The scheduling order required notice of scientific evidence by February 5, 2018, and set March 5, 2018, as the deadline for pretrial interviews. While N.A.'s CYFD records were released to the parties on March 23, 2018, after the deadlines had passed, defense counsel indicated at a

hearing on May 8, 2018, that he had only just retained Dr. Shwartz. Defendant did not explain why he waited nearly two months to engage an expert, and his claim that he "could not have known the need for Dr. Shwartz prior to the deadline" is refuted by the fact that, when seeking these very records in November 2017, Defendant wrote that he was aware of N.A.'s abuse, that she was receiving psychological services, and stated that "the CYFD records . . . are highly likely [to] contain relevant information regarding past incidents of abuse, information on medical and psychological treatment as well as information on therapy and behavioral issues, *all of which are critical in assessing the credibility and mental state of the most important witnesses.*" (Emphasis added.) In light of these facts, we cannot conclude that Defendant lacked responsibility for the untimely disclosure.

**{11}** As for prejudice, Defendant offers only a conclusory statement that the exclusion violated his right to present a defense. While the insufficiency of his briefing on this point is reason enough to conclude that Defendant has not met his burden, *see Lukens*, 2019-NMSC-002, ¶ 5, we are also persuaded that Defendant did not suffer prejudice by the exclusion of Dr. Shwartz given the district court's unchallenged conclusion that her proposed opinion testimony was impermissible under any circumstance.

**{12}** The State sought to exclude Dr. Shwartz's testimony not only on timeliness grounds, but also on the basis that her testimony would constitute an impermissible comment on N.A.'s credibility. When the district court heard the matter, three days before the jury trial was set to commence, the defense argued that Dr. Shwartz's testimony was offered for the express purpose of showing that children who have experienced trauma have tendencies to lie or fabricate. After the district court confirmed that Dr. Shwartz had done no evaluation of N.A. other than having reviewed limited records from CYFD, the court concluded that her proposed testimony was improper and she would not be allowed to opine or testify about whether there was a potential that N.A. was lying about the allegations. The court limited the scope of her proposed testimony, saying that

> if you wanted to present her in a general sense, having not had any contact with these kids or done any evaluation on these particular folks to talk about the cases that she has had experience with and lay the foundation for that, that's a different story. *But then to sort of extrapolate that into the circumstances of this case because this child has had some significant things happen in her background that are pretty tragic and because of that that she's lying under the circumstances here, that won't be allowed.*

(Emphasis added.) *See State v. Alberico*, 1993-NMSC-047, ¶ 84, 116 N.M. 156, 861 P.2d 192 (stating that while expert testimony on PTSD "may be offered to show that the victim suffers from symptoms that are consistent with sexual abuse, it may not be offered to establish that the alleged victim is telling the truth; that is for the jury to decide"). Consequently, we fail to see how the district court's ultimate decision to exclude Dr. Shwartz on timeliness grounds prejudiced Defendant when her proposed

opinion testimony could not have been presented at all, even if she had been timely disclosed.

**{13}** In light of these considerations, we see no abuse of discretion in the district court's decision to exclude Dr. Shwartz.

## B.     DNA Expert

**{14}** Defendant argues that the court also erred in limiting the testimony of his proposed DNA expert, Dr. Michael Spence. The district court determined that while Dr. Spence could testify as an expert as to his review of the State's DNA analysis and that he could offer non-expert testimony on the subject of DNA transfer, he would not be allowed to opine on whether DNA transfer occurred in this case. The court found that testimony regarding whether transference happened in this case was speculative and would not be permitted.

**{15}** This Court considers the district court's admission of expert testimony under an abuse of discretion standard. *Id.* ¶ 58. "Where expert testimony concerns scientific knowledge, the proponent of the testimony must establish the reliability of the science and methodology on which it is based." *Andrews v. U.S. Steel Corp.*, 2011-NMCA-032, ¶ 13, 149 N.M. 461, 250 P.3d 887 (citing *Alberico*, 1993-NMSC-047, ¶¶ 43-45). Courts consider a number of factors in determining whether those requirements are satisfied, including, but not limited to, "whether the scientific technique is based upon well-recognized scientific principle and whether it is capable of supporting opinions based on reasonable probability rather than conjecture." *Id.* ¶ 14.

**{16}** In this case, the district court's limitation of Dr. Spence's testimony was appropriate. Contrary to Defendant's characterization of the district court's ruling, the court did not prohibit Dr. Spence from testifying about secondary DNA transfer—the court ruled that Dr. Spence could not "speculate about whether transfer occurred, and if it did, how it occurred in this case, based upon his review." Given that Dr. Spence performed no case-specific analysis other than to review the State's laboratory reports, we detect no abuse of discretion in the district court's ruling. *See id.*

## III.     Facebook Messages

**{17}** Defendant argues that the district court erred in admitting Facebook messages. Exhibits 7 and 8 contained Facebook messages between Defendant and D.H., sent both before and after the assault, and show Defendant coordinating with D.H. about meeting up and acknowledging that he had had sex with N.A. Exhibit 9 contained Facebook messages between Defendant and N.A. sent after the assault and Defendant acknowledged having sex with N.A. Defendant argues the State did not establish a proper foundation for the admission of the messages and that the admission of the messages violated his constitutional right of confrontation. We address each argument in turn.

## A.      Admission as Business Records

**{18}**    We first address Defendant's argument regarding the admission of Facebook messages as self-authenticating business records under Rules 11-803(6) and 11-902(11) NMRA. As we understand his argument, Defendant contends that the records were not properly authenticated.

**{19}**    "As a general rule, the admission of evidence is entrusted to the discretion of the trial court, and rulings of the trial judge will not be disturbed absent a clear abuse of discretion." *State v. Trujillo*, 2002-NMSC-005, ¶ 15, 131 N.M. 709, 42 P.3d 814 (alteration, internal quotation marks, and citation omitted). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Maples*, 2013-NMCA-052, ¶ 13, 300 P.3d 749 (internal quotation marks and citation omitted).

**{20}**    Records of a regularly conducted activity are admissible as an exception to the rule against hearsay under Rule 11-803(6), also known as the business records exception, *State v. Aragon*, 2010-NMSC-008, ¶ 18, 147 N.M. 474, 225 P.3d 1280, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110, when four foundational requirements are satisfied: (1) "the record was made at or near the time by—or from information transmitted by—someone with knowledge"; (2) "the record was kept in the course of a regularly conducted activity of a business, institution, organization, occupation, or calling, whether or not for profit"; (3) "making the record was a regular practice of that activity"; and (4) the rule's conditions are shown by "a certification that complies with Rule 11-902(11)[.]" Rule 11-803(6). Rule 11-902(11), in turn, provides that business records are self-authenticating if the requirements of Rule 11-803(6)(a) to (c) are "shown by a certification of the custodian or another qualified person that complies with a statute or rule prescribed by the Supreme Court."

**{21}**    Defendant has not argued that the certification failed to satisfy the requirements of Rule 11-803(a)-(c). He contends, summarily, that the certification offered by the State was insufficient to satisfy Rule 11-902(11) because it was not notarized. Under Rule 23-115 NMRA, however, notarization was not necessary:

>          Unless expressly provided by any other rule approved by the Supreme Court, any written statement in a pleading, paper, or other document that is not notarized shall have the same effect in a court proceeding as a notarized written statement, provided that the statement includes the following:
>
>          A.      the date that the statement was given;
>
>          B.      the signature of the person who gave the statement; and
>
>          C.      a written affirmation under penalty of perjury under the laws of the State of New Mexico that the statement is true and correct.

The certification provided by the State satisfies those requirements: the "certificate of authenticity" was dated, signed by Jennifer Moore as "a duly authorized custodian of records for Facebook," and contained the appropriate language of affirmation declaring under penalty of perjury that the certification is true and correct. Accordingly, we find no error in the district court's admission of the Facebook messages under the business records exception.

## B.      Confrontation Clause

**{22}**      Defendant also claims that the admission of the Facebook messages violated his right of confrontation because they contained statements between Defendant and D.H., who did not testify at trial.[1] The State responds that the statements were not testimonial and thus, not subject to the Confrontation Clause. We agree with the State.

**{23}**      The Confrontation Clause provides that in all criminal prosecutions, the defendant shall be confronted with the witnesses against him. *State v. Walters*, 2007-NMSC-050, ¶ 21, 142 N.M. 644, 168 P.3d 1068. "Out-of-court testimonial statements are barred under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court." *Aragon*, 2010-NMSC-008, ¶ 6 (internal quotation marks and citation omitted). "We apply a de novo standard of review as to the constitutional issues related to [the d]efendant's rights under the Confrontation Clause." *State v. Massengill*, 2003-NMCA-024, ¶ 5, 133 N.M. 263, 62 P.3d 354.

**{24}**      Whether the admission of the Facebook messages violated Defendant's right of confrontation depends on whether the messages were testimonial, as "only testimonial statements cause the declarant to be a witness within the meaning of the Confrontation Clause." *Aragon*, 2010-NMSC-008, ¶ 6 (internal quotation marks and citation omitted). The "core class of testimonial statements" include

> ex parte in-court testimony or its functional equivalent that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial; and to police interrogations.

*Id.* (emphasis, omissions, and alterations omitted) (quoting *Crawford v. Washington*, 541 U.S. 36, 51-52 (2004)).

---

1We decline to address Defendant's brief references to Facebook messages between Defendant and other women, and other statements attributed to D.H. at trial, because Defendant failed to develop any argument on those matters. *See* Rule 12-318(A)(4) NMRA; *Lukens*, 2019-NMSC-002, ¶ 5.

**{25}** "Since *Crawford*, a majority of the United States Supreme Court has mainly focused on the primary purpose for which the statement was made." *State v. Navarette*, 2013-NMSC-003, ¶ 8, 294 P.3d 435. Under this analysis, statements are testimonial when made for the primary purpose of establishing or proving "past events potentially relevant to later criminal prosecution—in other words, for the purpose of providing evidence." *Id.* (internal quotation marks and citation omitted). The identity of the person to whom the statement is made is relevant to that analysis. As the United States Supreme Court observed, "[c]ourts must evaluate challenged statements in context," and "[s]tatements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers." *Ohio v. Clark*, 576 U.S. 237, 249 (2015).

**{26}** Our Supreme Court reached a similar conclusion in *State v. Gurule* after evaluating "whether the Confrontation Clause applies to statements between two family members when there is no involvement by any government official." 2013-NMSC-025, ¶ 12, 303 P.3d 838. The Court concluded that

> [the defendant's] statement to her son is more akin to the situation in which a person makes a casual remark to an acquaintance than to an individual who makes a formal statement to a government official as part of a police investigation. Moreover, it is not clear that a reasonable person in [the defendant's] position would objectively believe that a statement made to his or her child would be used in a later criminal prosecution. Thus, [the defendant's] statement lacks the hallmarks of a testimonial statement. Because [the defendant's] statement was not testimonial, the Confrontation Clause under the post-*Crawford* line of cases is not implicated.

*Id.* ¶ 38 (citations omitted).

**{27}** The same conclusion is warranted here because the Facebook messages between D.H. and Defendant do not bear the hallmarks of testimonial statements. The messages were not the functional equivalent of in-court testimony or of the sort that would "lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *See id.* ¶ 35 (internal quotation marks and citation omitted). Rather, the statements of Defendant, as well as those made in response, were statements made between acquaintances. Therefore, as in *Gurule*, we conclude the Facebook messages were non-testimonial and did not violate Defendant's right of confrontation.

## CONCLUSION

**{28}** For the foregoing reasons, we affirm.

**{29}** **IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JANE B. YOHALEM, Judge**