This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40272**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JACOB P. GONZALES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Conrad F. Perea, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Eric Orona, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** Defendant Jacob Gonzales appeals his convictions for kidnapping in the first degree, pursuant to NMSA 1978, Section 30-4-1 (2003), conspiracy to commit kidnapping, pursuant to NMSA 1978, Section 30-28-2(A) (1979), aggravated battery (deadly weapon), pursuant to NMSA 1978, Section 30-3-5(C) (1969), possession of a firearm by a felon, pursuant to NMSA 1978, Section 30-7-16 (2020, amended 2022), and interference with communications, pursuant to NMSA 1978, Section 30-12-1

(1979). Defendant argues for reversal because (1) the district court erred in granting the State's motion for forfeiture by wrongdoing; (2) the district court committed evidentiary errors; (3) the State committed prosecutorial misconduct; and (4) his sentence must be corrected based on a clerical error. We conclude the district court erred in granting the State's motion for forfeiture by wrongdoing, which led to violations of Defendant's constitutional right to confrontation, and therefore reverse.

**BACKGROUND**

**{2}** Defendant and Victim have a daughter together. Following an August 2020 altercation with Victim, Defendant was charged with the aforementioned offenses by criminal information, which was accompanied by a no-contact order as to Victim. Victim initially cooperated with the State. She was interviewed by two police officers the day of the incident. She also testified at the preliminary hearing in September 2020, but, according to the State, Victim stopped answering her phone calls in late March or April of 2021.

**{3}** In April 2021, the State filed a motion for forfeiture by wrongdoing, arguing that Defendant, after his arrest, had "intentionally procured [Victim's] unavailability as a witness" by coercing her into ending her cooperation with the State. Defendant did not file a response to the motion but did participate in the telephonic hearing at which he opposed the State's request. At the hearing, the State provided eighty-two pages of text messages between Defendant and several people, including Victim, between September 2021 and April 2022, sent from the correctional facility where Defendant was detained. The State attempted to offer evidence of jail phone calls between Defendant and Victim, but the district court did not allow those into evidence. After the hearing, the district court granted the motion and issued an order concluding that Defendant forfeited his confrontation rights as to Victim, but did not specify which evidence could or could not be admitted at trial in this regard.

**{4}** Trial began in October 2021. Before voir dire, the State indicated it wanted to admit the district court's order finding forfeiture by wrongdoing as an exhibit at trial and argued the order was evidence of consciousness of guilt. The State also requested to admit the text messages and jail phone calls between Defendant and Victim on the same grounds, arguing that Victim's refusal to cooperate as a witness was induced by Defendant's contact with her. In response, Defendant asked the district court to reconsider its ruling allowing Victim's out-of-court statements and objected to the admission of the text messages and jail phone calls as hearsay, based on Rule 11-403 NMRA, and as being cumulative. Defendant also objected to the admission of the order itself as evidence. The district court declined to reconsider its forfeiture by wrongdoing determination and admitted the order, text messages, and jail phone calls, despite the latter having been excluded from the prior evidentiary hearing. Defendant was found guilty on all counts. Defendant appeals.

**DISCUSSION**

**{5}** Defendant argues that the district court erred in granting the State's motion for forfeiture by wrongdoing because the State failed to establish that Defendant intended to cause Victim's unavailability, Defendant committed misconduct that caused Victim's unavailability, and Victim was unavailable. Defendant's argument is based on the Confrontation Clause of the Sixth Amendment. "Questions of admissibility under the Confrontation Clause are questions of law, which [appellate courts] review de novo." *State v. Aragon*, 2010-NMSC-008, ¶ 6, 147 N.M. 474, 225 P.3d 1280, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110.

**{6}** "Under the Confrontation Clause, an out-of-court statement that is both testimonial and offered to prove the truth of the matter asserted may not be admitted unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant." *State v. Smith*, 2016-NMSC-007, ¶ 42, 367 P.3d 420 (internal quotation marks and citations omitted). Nonetheless,

> when defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims, the Sixth Amendment does not require courts to acquiesce. While defendants have no duty to assist the [s]tate in proving their guilt, they do have the duty to refrain from acting in ways that destroy the integrity of the criminal-trial system. We reiterate what we said in *Crawford*[ *v. Washington*, 541 U.S. 36 (2004)]: that the rule of forfeiture by wrongdoing extinguishes confrontation claims on essentially equitable grounds. That is, one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation.

*Davis v. Washington*, 547 U.S. 813, 833 (2006) (omission, emphasis, internal quotation marks, and citations omitted). Our Supreme Court has explained that the "rationale underlying such a rule of forfeiture is the law will not allow a person to take advantage of [their] own wrong." *State v. Alvarez-Lopez*, 2004-NMSC-030, ¶ 8, 136 N.M. 309, 98 P.3d 699 (alteration, internal quotation marks, and citation omitted).

**{7}** To establish that Defendant forfeited his right to confrontation, the State was required to prove by a preponderance of the evidence that (1) Victim was expected to be a witness; (2) Victim became unavailable; (3) Defendant's misconduct caused Victim's unavailability; and (4) Defendant intended by his misconduct to prevent Victim from testifying. *See id.* ¶ 10. We turn to the final requirement, whether Defendant intended to prevent Victim from testifying.

**{8}** For the intent prong, the moving party "need not show the wrongdoer was motivated solely by a desire to procure the witness's unavailability; instead, the proponent need only establish that the wrongdoer was motivated in part by a desire to procure the unavailability." *State v. Maestas*, 2018-NMSC-010, ¶ 43, 412 P.3d 79 (emphasis, internal quotation marks, and citation omitted). However, the intent must be specific: "the exception only applies when the actor has in mind the particular purpose of making the witness unavailable by [their] conduct." *Id.* (internal quotation marks and citation omitted). Moreover, direct evidence of intent is not required "because it may

suffice to infer under certain facts that the wrongdoer intended to prevent the witness from testifying. *Id.* (internal quotation marks and citation omitted).

**{9}** As we noted above, the evidence presented at the forfeiture by wrongdoing hearing included eighty-two pages of text messages between Defendant and several people—one of whom was Victim—between September 2020 and April 2021. Defendant exchanged over 700 text messages with Victim during that time, all in violation of the no-contact order. To establish that Defendant intended to cause Victim's unavailability, the State relies on the facts that Defendant messaged Victim "let's run away together an fuck the courts !"; Defendant knowingly violated the no-contact order; and he knew his messages were being monitored by the State but continued to message Victim.

**{10}** The context of the message that the State relies on includes a lengthy conversation between Defendant and Victim about their romantic and parental relationship and other people trying to romantically engage with Victim. **[44-45]** The conversation proceeded with the following exchange:

> Victim: I mean if I had a fine ass baby mama I'd wanna kill her too lol
>
> Defendant: na see now I don't know what your talking bout … tryna play me like that !! let the cops judge an dea do their jobs !
>
> Victim: Im so over this court shit fr I can't wait to move so they stop harassing me ….. I'm done I just wanna move a start all brand new none of my past to come with me
>
> Defendant: miss me with that ! I thought you we're hood why do you gotta try to play the part .. look I ain't tryna argue with your bitter ass.. God bless you can you do me a favor tell my Beautiful daughter dad said good morning princess an that I love her with all my heart!
>
> Defendant: let's run away together an fuck the courts! their crooked its all bs.. I'm pretty sure the courts try to press an threaten you ?? cause I know you an whatever you got going on I know this ain't what it is!
>
> Defendant: an why can't you tell me which supposedly friend I sent to hit you up so I can slap em .. I'd let you know if one of your rachet friends try to hit me up!
>
> Victim: Ima up an leave at the end of january…can you sign those papers you told me you would? An yeah they do Ima

just change my number move to a whole different state cuz it's all too much I aint with it

Defendant: you do what you got to do if it benefits you an my daughter ! do it ! I ain't no bitter person ! grown an succeed I'll see y'all in the future of we'll meet again hopefully on better terms

Defendant: an the courts can force you to do none they can threaten you all they want fuk the court system you'll be straight … I'd leave this state to shit I was trying to an its just like an entrapment here !

Victim: I'll be here every other weekend so she can see your parents and mine but I'll make more money over there an it'll be a fresh start for all of us … I don't have any more money on here so this will be my last message for awhile but have a good one behave make sure you wear your mask an please tell your fatty to take those pics down I don't wanna ruin your commissary monies lol

Defendant: I'd do anything in this world for you Danielle I hope you understand an realize an if that's what you want me to do … I'd do it for you no questions asked … I'd be heart broken cause the only thing that keeps me in spirit is my daughter an to have that ripped from me would be tough

Defendant: you ain't gotta explain none to me! like I said I know you smart an I'm pretty sure it'd beneficial … do what you got do for you an my daughter !! It ain't bout us anymore you or me … my daughter needs what's best for her…

That essentially concludes the conversation.

{11}   This conversation is the only time the parties communicate in a way that could be perceived as a conversation about Victim not testifying at trial. Assuming, though, that the conversation indicates Defendant's intent to persuade Victim to move away from New Mexico, it provides no indication that Defendant intended Victim to not testify against him at his trial. It was Victim who initiated the conversation about leaving New Mexico and being frustrated with the State. Defendant specifically told Victim to let authorities do their job, to avoid harassment by the court, and to do what she needed for the success of their daughter. In fact, Defendant notes how difficult it would be to be separated from his daughter if they moved. We cannot agree with the district court that Defendant's brief reference to and complaints about the court system—among hundreds of messages in which no indication of intent to cause or procure Victim's unavailability at trial is evident either directly or by something other than surmise—

demonstrate that he "was motivated in part by a desire to silence the witness." *See Alvarez-Lopez*, 2004-NMSC-030, ¶ 13 (emphasis, internal quotation marks, and citation omitted). Rather, Defendant's statements can be more sensibly read to support Victim's decision to move from the state for unrelated reasons. Such support by Defendant for Victim's decision does not necessarily discourage Victim from testifying, nor in any way preclude her testimony had she moved. Moreover, these messages represent one conversation of many that occurred over eight months. The messages demonstrate that during his incarceration the two had communications, which were more positive than not, that Defendant regularly asked Victim to tell their daughter he loves her and failed to demonstrate as a whole an intent to cause Victim to not testify at his upcoming trial. Defendant's knowledge that the contact would be seen by the State and his violation of the no-contact order do not change this analysis.

**{12}** Mindful that a defendant's constitutional right of confrontation does not extend to "allow an actor to benefit from his own wrong," *Maestas*, 2018-NMSC-010, ¶ 24 (internal quotation marks and citation omitted), the State has not proven by a preponderance of the evidence that Defendant intended the requisite wrong. As such, we reverse Defendant's convictions because the doctrine of forfeiture by wrongdoing was incorrectly applied by the district court in this case, and the ensuing evidence admitted at trial violated Defendant's constitutional right to confrontation and was not harmless. Given Defendant's conviction was otherwise supported by substantial evidence, we remand for retrial. *See Alvarez-Lopez*, 2004-NMSC-030, ¶ 24, 32 (determining application of the doctrine of wrongdoing to be erroneous, in violation of the defendant's right of confrontation in a manner that was not harmless to the conviction, and remanding for retrial). Given our ruling in this regard, we need not address Defendant's remaining arguments.

**CONCLUSION**

**{13}** For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

**{14} IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**MEGAN P. DUFFY, Judge**